The following opinion was delivered:
By Senator Edwards. Both parties have submitted to the correctness of the judgment of affirmance of the supreme court, and as neither of them has brought a writ of error upon that judgment, it can not now be reviewed by this court. We are to consider it what the records of the supreme court showed it to be, a valid judgment in the name of Thomas Robert against the Traders’ Insurance Company, before it was vacated by the order of the supreme court. Was then the judgment of the supreme court in [634] granting the order at the special term correct?
It is contended that the supreme court had no jurisdiction over the cause, except for the purpose of reviewing the judgment of the superior court upon the case presented by the writ of error to that court. This position, I think, can not be maintained. For every purpose of the jurisdiction of the appellate court, the record itself is supposed to be removed, although, in point of fact, only a transcript is sent up (Graham's Pr. 786). When a writ of error and transcript of the record is returned to the supreme court,the plaintiff may move to amend, or the defendant, to quash the writ, or non pros the plaintiff (1 Caines, 251). The supreme court, in such a case, may even award a venire when it becomes necessary (Arnold and others v. Sanford and others, 14 Johns. R. 417). And on the rendition of the judgment the execution issues from that court. After the return of the writ of error and the transcript of the record, the court have jurisdiction over the cause for all purposes in the same manner as the subordinate tribunal had jurisdiction. Having rendered the judgment they have the control over it—and having a right to issue the execution, they have a right to stay it on a proper application.
But it is said by the counsel, if the supreme court liad gained jurisdiction of the cause for other purposes than for review, after the judgment of affirmance was rendered by that court, one of the justices had not the power at a special term to stay the proceedings and vacate the judgment. By the act passed in 1830 (Sess. Laws, 208), the justices of the supreme court, some, or one of them were directed to sit in vacation for the purpose of hearing *356 and deciding all such non enumerated business as should arise in that court; except such as they directed should be heard in term time. Was this mo tion, then, non-enumerated business? If it was, one of the justices was required to hear it at a special term. In my opinion, it was non-enumerated business. An enumerated motion involves an inquiry into the merits.of the pause (1 Dunlap's Pr. 324; Remsen v. Isaacs, 1 Caines, 22). Did the [635] relief here sought by the party, involve an inquiry into the merits of the cause? what was it? The company sought to be relieved from the operation of a judgment obtained against them in consequence of the payment of a mortgage to Bolton by the means of Robert. When was this payment made? It was made after the judgment in the superior court, while the writ of error was pending in the supreme court, and before the judgment of that court was rendered; but this fact was not known to the company until fifteen days after the rendition of the judgment. It was a fact, therefore, that could not have been interposed to defeat the recovery; it did not exist until after the recovery, and could not, therefore, have gone to the merits of the cause. It is not now insisted upon as a defence to the action, or to show that no judgment ought to have been recovered; but it is'insisted upon to show, that though a regular judgment has been recovered, it ought not to be collected. It is insisted upon, therefore, by way of satisfaction of the judgment in the nature of a payment. It is a motion for summary relief against a judgment: the remedy by motion being now adopted as a substitute for the ancient writ of audita querela, which has become obsolete (Suter v. Mundell, 1 Bos. & Pul. 429; Wardell v. Eden, 2 Johns. Cas. 261; 2 Sclw. Pr. 252). It was a motion, therefore, to perform the office of that writ, which is a remedial writ invented to prevent a defect of justice where a party had a good defence, but by the ordinary forms of law had no opportunity of making it, and is to afford relief after judgment rendered. As it did not involve an inquiry, therefore, into the merits of the case, it was not of the nature of an enumerated motion.. Besides, what had the legislature in view as non enumerated business of the supreme court, when the act was passed requiring one of the justices of that court to hold special terms ? The legislature had reference to the practice of that court as it then existed. By the rules of the court, certain motions had been denominated enumerated, and others non-enumerated motions, and the classification of these motions was the same, when the act was passed, as those now comprised within the [636] forty-seventh rule of that.court. The legislature then must have intended any motion arising in that court, then not already classified and denominated as enumerated; and as this motion most clearly is not one of those thus classified, and as it can not be thus classified, inasmuch as it does not involve an inquiry into the merits of the cause, it must be such a motion as the legislature intended to embrace within the act to which I have alluded as non enumerated, and such therefore as they intended should be heard at the special terms.
The next question is, where the facts submitted to the chief justice sufficient to justify him in ordering a vacatur of the judgment ? With a view of arriving at a satisfactory conclusion on this point, let us inquire, who were the original parties in interest, what were-their rights,- and how far were they affected by the assignment of the policies and the subsequent payment of the mortgage executed by Robert to Bolton. Who were the original parties in interest ? The chief justice appears to have taken it for granted, that the case authorized him to conclude, that though the policies were taken in the name of Robert, yet they were only nominally so,and that they were taken to secure Bolton’s interest; and that therefore Bolton was the principal; for he says, “ The simple state of the case is this; Mr. Bolton lent $5500 and took two securities, a mortgage and an insurance upon his interest as mort *357 gagee.” Again he says, “ The mortgage and the policies were separate securities for the same sum of money.” From the closest examination I have been able to give this case, I can not arrive at any such conclusion. It is true the case shows that Bolton took two securities, but what were they? The one was a mortgage, and the other three assignments of the three policies. Of whom did he take them? Of Thomas Robert. Instead, then, of taking a mortgage and an insurance upon his interest as mortgagee from the company, he took a mortgage and the assignments of the policies, as collateral security from Robert, and the mortgage and the assignments, as between Robert and Bolton, were separate securities for the same debt. The case nowhere shows that the company gave the policies for the purpose of being assigned to Bolton, or that they were ever intended to be given as collateral [637] security for the payment of Bolton’s mortgage; and the objects of the insurance, as stated in the policies, forbid any such conclusion. The company say the first policy, in consideration of $81 paid by Thomas Robert, they insured him, by the name, style and description of Thomas Robert, against loss or damage by fire to the amount of $1800, in the following manner, to wit, $800 on a two story frame building, and $1000 on a two story frame building with brick front, then erecting. The other two policies are substantially the same in these particulars. Neither Francis Bolton or his mortgage is anywhere mentioned or referred to in these policies, nor does it appear that the company, at the time they were executed, even knew there was such a mortgage. The only circumstance to favor such an inference is that the assignments from Thomas Robert to Francis Bolton bear even date with the policies as set out in the declaration, but these dates are set out with a videlicit which would allow the plaintiff to prove them executed on any other day before the commencement of the suit. This, therefore, in my view, is not sufficient to show they were concurrent and simultaneous acts. Had the company, at the time they were executed, designed them for Bolton, the mortgagee, they would have made him, instead of Thomas Robert, the principal; and from their not having done so, we are to construe the policies as we find them, insurances to Thomas Robert, to" whom the declaration avers they were delivered, and an engagement on the part of the company, to pay the loss or damage to him, has executors, administrators or assigns. This view is not only consistent with the true construction of the policies, but it is also consistent with the true construction of the assignments endorsed upon them. The company endorsed their consent to have the policies transferred to Francis Bolton, thereby clearly admitting that Francis Bolton is not the original party in interest. Thomas Robert and the company, therefore, were the original parties. Thomas Robert, to whom the policies were delivered, being the original party in interest, had a right to assign them to any one he thought proper, by complying with the terms, prescribed by [638] the policies. He was under no obligation to assign them to Francis Bolton. He paid the premium, was the owner, and the interest of the policies was in him.
Let us then, in the next place inquire, how far the rights of the parties w ere affected by the assignment. Thomas Robert owed Francis Bolton a debt of $5500,secured by his bond and a mortgage on the buildings In question, and the lots on which they were erected. He owned three policies of insurance, in each of which it was stipulated that the interest of the assured was not assignable unless by the consent of the company manifested in writing. That consent he obtained: he therefore acquired the right to assign the policies as his property; that right he exercised by assigning them as a collateral security to Francis Bolton for the payment of his mortgage. Did the fact that they were so assigned give Bolton the absolute indefeasible interest in the policies, or only a collateral interest for the time being? I am of opinion that he had *358 only a collateral interest, liable to be diversed whenever Robert paid the mortgage; an i when the company consented to the assignment, they consented to it for the purposes for which it was made, and this consent gave him the right thus to use it; but this could not alter or vary the extent of the liability of the company. The policies still remained good for their original purpose, to wit, to pay the loss and damage on the buildings occasioned by fire-, not to Robert, it is true, if it happened while the assignee held the policies, for he had an interest, so far as the payment of his mortgage was concerned, and that interest to the amount of the damage the company had become liable to pay; they were liable to pay to him as assignee, and by doing so they would have extinguished their liability. But the fact that Robert paid the mortgage or caused it to be paid, could not enure to the benefit of the company. They did not insure the payment of the mortgage, and the payment of it by Robert, or by his means, had no other effect than to bring back to him that interest in the policies which he had assigned, and of course the interest also in the judgment which had been obtained upon the policies. Had they paid [639] the damage on the policies while they were in the hands of Bolton, or had they paid the judgment to Bolton, I grant it would have been good, for then it would have applied on his mortgage and enured to the benefit of Robert by discharging him from so much of the debt he owed Bolton. But as the policies were not given to secure the payment of the mortgage, and as the case does not show they were given for Bolton’s benefit, I can not come to the conclusion that the payment of the mortgage to Bolton, by Robert, can enure to the benefit of the company so as to discharge them from their liability. I readily concede,that had the case shown that the policies were given to Bolton to secure him the payment of his mortgage, the payment of the mortgage would have released the company from their liability, for that would have put an end to the risk; the payment of the mortgage, in that case, being the only thing insured. The case would then have fallen within the principle settled in Godsall v. Baldwin (9 East, 72), and in Hamilton v. Meads (2 Burr. R. 1210), and I fully accede to the correctness of the doctrine laid down by Lord Mansfield in the latter case, where he says, “ the plaintiff’s demand was for an indemnity, his action then must be founded upon the nature of the damnification as it really is at the time of the action brought.” Now what was the nature of the damage in this case, when the action was brought ? It was the distraction and loss of the buildings of Robert, by fire, and for that loss and damage the company, by their policies, had covenanted to pay Robert or his assigns ; and in consideration of these covenants, Robert paid them the premiums, amounting in all to $162'25. Now although Robert assigned the policies to Bolton, and thereby gave him a right to recover against the company the damage sustained, if it accrued while he was the assignee; and although the fire happened and the damage did accrue, and although a judgment was recovered against the company for the damage, yet the company have not paid that judgment, or the mortgage for the payment of which the policies were assigned. The judgment was a valid judgment in favpr of Bolton, in the name of Robert. Had the company paid the [640] money upon the judgment, it would have been Bolton’s, but it would have been applied to the benefit of Robert, by paying a debt he owed Bolton. Had Bolton assigned the judgment, could not his assignee have collected it of the company ? Had not Bolton a right to assign the judgment to whom he pleased, and had not Robert the same right as any other individual to take an assignment of this judgment, conceded on all hands to be valid against the company ? The chief justice observes, “ what effect an assignment of the judgment would have had, it is unnecessary to decide,” as much as to say, in his view it might have altered the case. But why was it necessary for Robert to have an assignment from Bolton? The judgment was in tho *359 name of Robert, and the payment of the mortgage brought back to him the whole interest in the judgment as effectually as it could have been done by an assignment, had one been drawn up and executed in due form, even had that payment been made voluntarily on the part of Robert; but the payment was not voluntary, the mortgage was foreclosed, and he was compelled to advance the money the company should have paid in consequence of their liability on the judgment, so save his property from being sacrificed by a sale on the mortgage, and he had therefore a right to be substituted in the place of Bolton, who held the judgment against the company. Nor could he be deprived of the benefit of the judgment he was compelled to advance the money for, on account of having subsequently obtained another policy on the same property and not having given notice thereof, while the policies in question were in the hands of Bolton as assignee. The liability of the company having accrued, and the judgment having been obtained upon that liability, any one had a right to purchase in that judgment. Robert having been compelled to avarice the amount of the judgment on themortgage, did not thereby subject himself to have the same defence set up against him, by way of avoidance, which might have been set up had he continued to be the owner of the policies. He was not the owner of the policies when he effected the second policy, and therefore was under no obligation to give notice thereof. Bolton was then the owner, and the supreme court have decided that the omission to give notice of the second policy was not, under the [641] circumstances of the case, a good defence; that judgment has been acquiesced in both parties, and as no other action can be brought for the same liability, it could not be a defence anywhere.
From the view, therefore, that I have taken of this case, I am of opinion that the facts it presents do not warrant us in coming to the conclusion that the judgment of the supreme court should be vacated or the execution stayed. I am therefore for reversing the order vacating the judgment and staying the execution.
On the question being put, Shall this judgment or order of the supreme court he reversed? the members of the court voted as follows:
In the affirmative—Senators Armstrong, Beckwith, Downing, Edwards, Fox, Hunter, J. P. Jones, Lawyer, Loomis, Lounsberry, Mack, Speaker and Sterling—13.
In the negative—The President op the Senate, Huntington, Powers, Seger, Wager and Willes—6.
Thereupon the order of the supreme court staying proceedings, &c., was reversed.