The Buffalo Steam Engine Works *v.* The Sun Mutual Insurance Company.

these conditions were positive in their character; others negative. Certain things were to be done by the assured, and other things were not to be done. If all these conditions were performed, then, if a loss occurred, the defendants agreed to indemnify him against that loss, to the extent specified in the policy, and he appointed the plaintiff, his creditor, to receive from the defendants the amount for which they were thus contingently liable. The terms of this contract have never been waived, relaxed or modified. The defendants have shown an express violation of one or more of the conditions upon which their liability was to depend. And yet it has been adjudged, although it is evident that it has been done with reluctance and against the better judgment of the court making the decision, that the proof of these violations constituted no defence to the action.

The judgment should be reversed and a new trial granted, with costs to abide the event.

ROOSEVELT, J., dissented; SELDEN and STRONG, Js., concurred in the reversal, distinguishing this from the case where a policy is assigned with the assent of the insurers to a mortgagee; they were of opinion that in such case a privity of contract exists between the mortgagee and insurers, and the doctrine of *The Traders' Insurance Company* v. *Robert* should be maintained.

Judgment reversed, and new trial ordered.

---

The BUFFALO STEAM ENGINE WORKS *v.* The SUN MUTUAL
INSURANCE COMPANY.

Where a policy of insurance is assigned with the consent of the underwriter to a mortgagee of the subject insured, the assignee takes subject to the conditions imposed by the terms of the contract upon the person insured and his right to recover in case of a loss is barred by a breach of such conditions by the assignor subsequent to the assignment.

SMITH. — VOL. III.        51

The Buffalo Steam Engine Works *v.* The Sun Mutual Insurance Company.

So *Held,* where the owner of a vessel procured a marine policy upon her, the underwriter knowing at the time that the owner was indebted to the plaintiff for an engine furnished the vessel; that he was to mortgage the vessel to secure such debt, and that his object in obtaining the policy was to assign it as security for the debt. The policy contained permission to insure $40,000 and to assign the policies. After assigning the policy the mortgagor effected an overinsurance, and it was fatal to a recovery by the assignee.

APPEAL from the Superior Court of Buffalo. Action on a marine policy tried before Mr. Justice VERPLANCK, a jury being waived. Erastus Crooker was the owner of the steamboat Garden City. He was indebted to The Buffalo Steam Engine Works, the plaintiff in the action, in the sum of $16,000, for the engine and boilers of the boat, and was bound by contract to secure the debt by a mortgage of the boat, and by procuring and assigning to the plaintiff as a further collateral security a marine policy or policies. On the 22d June, 1853, Crooker obtained from the defendant, who had at the time information of the facts before stated, a policy of marine insurance for the period of a year. The boat was insured in the name of Crooker " on account of whom it may concern; loss payable to him," and the policy contained "permission to insure $40,000 and assign policies." On the same day Crooker by writing indorsed on the policy assigned to the plaintiff all his right, title and interest therein and to the moneys which fall due on the same and authorized it to collect the same in his name or otherwise. On the 19th July, 1853, Crooker executed a mortgage of the boat to the plaintiff, and on the same day executed another mortgage thereof, subject to the lien of the mortgage to the plaintiff, to Vincent Bidwell to secure a debt of $25,000 due to him.

Between the 22d June and the 19th July, 1853, Crooker effected insurance on the boat to the amount, including the policy issued by the defendant, of $45,000. Default having been made in the conditions of the mortgage to Bidwell, he, by virtue of the stipulations therein contained, sold her at

The Buffalo Steam Engine Works *v.* The Sun Mutual Insurance Company.

public auction, and himself became the purchaser, in November, 1853. The sale was made subject to the plaintiff's mortgage. Bidwell took possession of the boat and ran her as owner till May 16th, 1854, when she was wrecked upon a reef of rocks in Lake Huron.

These facts having been proved, together with service of preliminary proof of loss, &c., the defendant's counsel asked the court to decide that the insured interest of Crooker, the assured, having ceased prior to the loss, the contract of insurance had also ceased, and also that no recovery could be had because Crooker had insured the boat for more than $40,000, prior to the loss. The court refused so to decide, but decided that the plaintiff was entitled to recover and ordered judgment in his favor. The defendant took exceptions, and the judgment having been affirmed at general term appealed to this court.

*F. B. Cutting* for the appellant.

*John Ganson* for the respondent.

PRATT, J. The objection that Crooker, the assured, had at the time of the loss, ceased to have any insurable interest in the insured property, cannot be sustained. He still held the equity of redemption. Of this he was not absolutely divested even after forfeiture of the condition of the second mortgage. The pretended foreclosure and sale could have no effect to divest him of that interest. It was not a judicial sale, but simply an attempt to sell by virtue of the power of sale contained in the mortgage. The mortgagee, therefore, becoming himself the purchaser, acquired no additional title by the sale, but remained mortgagee still.

As owner of the property, by virtue of the mortgage, he could not sell to himself, and as the grantee of a power, although coupled with an interest, he would be equally unable to sell to himself without some statutory aid.

There cannot, in the nature of things, be that *aggregatio mentium* necessary to make a valid contract of sale in such a case. (*Utica Insurance Company* v. *Toledo Insurance Company*, 17 *Barb.*, 132; *Van Epps* v. *Van Epps*, 9 *Paige*, 241; *New-York Central Insurance Company* v. *National Protection Insurance Company*, 4 *Kern.*, 85.) A mortgagee of lands is enabled to purchase upon a foreclosure by advertisement only by the aid of the statute. The equity of redemption, therefore, not having been foreclosed, but still remaining in Crooker, he had at the time of the loss an insurable interest. Indeed, if the mortgage had been foreclosed so as to divest him entirely of the equity of redemption, his insurable interest would not have been entirely gone. He would have had still left an interest in respect of the first mortgage which would have been insurable. He was personally holden for the debt which was secured by that mortgage. He was thus directly interested himself in the property to the amount of that debt, for the application of it to the payment of the debt would so far discharge his personal liability. "In case of a debtor assigning property to be disposed of, and the proceeds applied to the payment of his debts, he still has an insurable interest in the property to its full value, so long as his own debts, to discharge which his property is assigned, remain in force against him, and unsatisfied and unreleased." (*Phill. on Insurance*, § 287; *Gordon* v. *Massachusetts Fire and Marine Insurance Company*, 2 *Pick.*, 249.) Upon the same principle, the mortgagor retains an insurable interest in the mortgaged property, although he dispose of the equity of redemption absolutely, so long as he is personally liable for the payment of the mortgage debt. By disposing of the property subject to the mortgage, it becomes the primary fund for the payment of the mortgage debt. The loss of the property, therefore, would be a direct loss to the mortgagor, who is personally responsible for the payment of the debt. There was in this case, therefore, no want of interest in the

ALBANY, JUNE, 1858. **405**

The Buffalo Steam Engine Works *v.* The Sun Mutual Insurance Company.

mortgagor, if any interest in him was required after the assignment of the policy to continue the validity of it. It is not claimed but that the mortgagee had an insurable interest, so that if by the assignment the entire interest in the policy passed to him it would be a valid policy in his hands.

The more difficult question in this case grows out of the over-insurance by Crooker. It was not contended on the part of the plaintiffs that the permission in the policy to insure $40,000 was not designed by the parties to limit the whole amount of insurance to that sum, and constituted, therefore, a warranty on the part of the insured, that the property should not be insured for a greater sum. Nor was it contended that if it amounted to a warranty, a breach of it on the part of the insured, provided he had not assigned, would not render the policy void. But it is insisted on the part of the plaintiffs that by the assignment to them they acquired an interest in the policy which could not be defeated by any act of the assignor done after such assignment. If the question was not embarrassed by the decision of this court in the case of *Tillou* v. *The Kingston Mutual Insurance Company* ( 1 *Seld.*, 405 ), it would not, I apprehend, be very difficult of solution.

That the mortgagor and mortgagee have both an insurable interest, is not denied. That either or both may effect an insurance to protect that interest, is well established. But it is not necessary, in this case, to decide upon their relative rights as against each other and the underwriters, when one procures an insurance for the purpose of protecting his interest alone, without regard to the interest of the other. I am inclined to think, that in cases of fire policies effected by the mortgagee upon the property, with a view to his own protection, the relative rights of himself, the mortgagor and the underwriters, as between each other, in case of loss, have not yet been determined upon any very satisfactory legal principles. But it is seldom in practice, that an

insurance is effected by the mortgagee, to protect his interest alone. As the object of the mortgage is mere security, if that security is endangered by the exposure of the mortgaged property to fire or other hazards, there is generally some mutual arrangement by which both parties may be secured through a single policy. Hence, in mortgages upon real property, where much of the value of the property consists in the buildings, it is quite common to insert a provision that the mortgagee may keep the property insured at the expense of the mortgagor, or that the mortgagor shall keep it insured, and either assign the policy as collateral security to the mortgagee, or have the insurance money, in case of loss, payable by its terms to him. In the former case, the mortgagee would, of course, be nominally the party to the instrument, and would alone be the party to all covenants, undertakings and conditions contained in it, and would alone be responsible for their performance. He would not, I apprehend, in such case, be responsible for the acts of the mortgagor, unless embraced within the terms of his undertaking. Still, the mortgagor would be interested in the policy, for, in case of loss, the insurance money received of the underwriters would be applied in payment of the mortgage debt.

But in either of the latter cases, the mortgagor would be the party to the contract, as well as the party primarily interested in the insurance. The mortgagee would seem to have no interest, except as security for the mortgage debt. It would seem to be an insurance of the interest of the mortgagor, with an irrevocable power of attorney to the mortgagee, to receive the avails of the insurance, in case of loss, and apply it upon the mortgage debt. (*King* v. *State Mutual Fire Insurance Company*, 7 *Cush.*, 1; *Robert* v. *Traders' Insurance Company*, 17 *Wend.*, 631; *Carpenter* v. *Providence Washington Insurance Company*, 16 *Pet.*, 495.) The interest of the mortgagor would be precisely the same as if no assignment, or provision for payment to the mortgagee, had been made.

The only difference is that, in the latter case, the anticipated avails of the policy, in case of loss, are thus devoted to the payment of the mortgage debt. Upon payment or discharge of that debt, the mortgagee would cease to have any interest in the subject of insurance and in the policy. But that would not affect the interest of the mortgagor. His interest would still continue, and if money should be collected by the mortgagee upon such policy, after the discharge and satisfaction of his mortgage, he would hold it as a mere naked trustee for the benefit of the mortgagor. The mortgagor being thus primarily interested, and being also the party to the contract, it would seem to follow, that his relations to the underwriters would not be changed by this appointment of the proceeds of the insurance to the payment of the mortgage debt. It is difficult to perceive upon what legal principles the mortgagee who takes an assignment of the policy, merely as collateral security for the payment of the mortgage debt, can be deemed to take it freed from all the conditions and undertakings to which it was subject before such assignment.

First. If the assignment was absolute, divesting the mortgagor of all interest both in the policy and in the subject of insurance, it might be different. In such case the company by assenting to the assignment might be deemed to consent to an entire change in the contract, so far as the assignor is concerned. The assignee in such case becoming the absolute owner of the subject of insurance, and entering into possession of it, might be deemed thereby to become a party to the contract, and to take upon himself the performance of its conditions; and the assignor ceasing to be in fact a party, could do no act by which the rights of the assignee could be affected. But when the assignment is made by a mortgagor to his mortgagee merely as collateral security, the mortgagor still, as a general rule, retains possession, and his interest continuing undiminished there is no reason why the relations of the parties to the

contract should be deemed changed. It is true the company consents to the assignment, but such consent would not be necessary unless there be some restriction in the by-laws making it necessary; and how such consent can be deemed to waive the performance of those conditions of the policy which were deemed by the parties to be material at the time of its execution, surpasses my comprehension. No new consideration is paid; no additional premium is exacted; and yet it is insisted that the company, by consenting to the mere appointment of the insurance money, if any should be received, to the payment of the mortgage debt, waived all those restrictions upon the use of the subject of insurance which were deemed necessary to enable the company to insure for the stipulated premium. No such intention, it is clear, ever entered into the minds of the underwriters.

Secondly. A warranty, or undertaking of that character, in a policy of insurance, is held to be in the nature of a condition precedent, a breach of which, of course, renders the contract void from the beginning. (1 *Arn.* 583.) The policy, until a loss occurs, is in the nature of an executory contract, and I know of no principle upon which the assignment of an executory contract can be held to free it from those conditions upon the performance of which it was to take effect. It could not have that effect, even if these conditions were to be deemed conditions subsequent. In such case it might be likened to the mortgage of a leasehold estate which was subject to conditions and covenants to be performed by the tenant under a penalty of forfeiture of the estate for non-performance. In such case no one would claim that the landlord, by consenting to such mortgage, would thereby waive the performance of the covenants and conditions contained in the lease. I can, therefore, perceive no reason why a similar consent of the company in this case should have any different effect; it would often work great injustice. This policy affords a most striking illustration of the injustice of such a rule. It was stipulated

in the policy that the steamer should be laid up on the 30th day of November at noon, and safely moored until the first day of April thereafter. Suppose the mortgagor had not laid up the vessel and it had been wrecked and lost in a storm in the month of December, would it not be a monstrous assumption that the company should be held liable for the loss in such a case; that it should be held liable upon a risk which it never assumed, and especially in a case where the mortgagor would receive the entire benefit of the amount paid? Take the case of an insurance of the safest kind of a building against loss by fire, such as a detached dwelling-house, which is insured at the lowest rate of premium. After the policy is delivered the insured assigns it, by the consent of the underwriters, to a mortgagor, as collateral security and then appropriates the building to the manufacture of fireworks, contrary to the express provisions of the policy. It is needless to state further illustrations of the injustice of such a rule. The insurers cannot, unless the courts are restrained by some technical rule which has become impregnable by repeated adjudications, thus be made to assume risks and hazards not only not covered by the terms of the policy, but excluded therefrom by its express provisions. Except the case of *Tillou* v. *The Kingston Mutual Insurance Company*, and the case which that assumes to follow, the authorities are ample to sustain the position that they cannot thus be made liable. The point was directly decided in *Carpenter* v. *The Providence Washington Insurance Company* ( 16 *Pet.*, 495), and in *Macomber* v. *The Cambridge Mutual Insurance Company.* ( 8 *Cush.*, 133 ); see also 4 *Cush.*, 403 ; 7 *Cush.*, 5 ; 17 *Wend.*, 631.)

We come then to the examination of the case of *Tillou* v. *The Kingston Mutual Insurance Company* (1 *Seld.*, 403.), to ascertain if that case interposes any insuperable barrier to prevent this court from disposing of the case at bar upon those legal principles already suggested, as the principles which should be applied to cases of this kind. That

case assumes to be based upon the case of *The Traders' Insurance Company* v. *Robert*, (9 *Wend.*, 404, 474), and the same case in the Court for the Correction of Errors. (17 *Wend.*, 631.)

In that case Roberts, the mortgagor of real estate, effected an insurance upon buildings against fire, and afterwards, with the consent of the company, assigned the policy to one Bolton, the mortgagee, as collateral security for the payment of the mortgage debt. The policy contained a stipulation that if the assured or his assigns should effect any other insurance upon the property, and not give immediate notice to the insurers, the policy should cease and be void. The mortgagor procured another insurance upon the property, and neglected to give notice to the company. A loss occurred and the preliminary proofs were made by the mortgagor; the suit was brought in his name and the declaration counted upon the policy as belonging to him, and averred that the plaintiff, at the time of the loss, was interested in the premises to the full amount of the policy. The plaintiff had judgment in the Superior Court, which was carried to the Supreme Court by writ of error, where it was affirmed. The latter court, Savage, Ch. J., giving the opinion, held that although the action was necessarily brought in the name of the assignor, he had no interest in the policy; that by the assignment, with the assent of the company, the entire interest in the insurance passed to the mortgagee, and that the mortgagor thereby became divested of all interest; that the relation of the parties, after the assignment, was precisely the same as if the policy had originally been taken out by the mortgagee as such, and the premium paid by him. Upon these assumptions the court could not hold otherwise than they did, to wit, that the interest of the mortgagee in such case could not be affected by any act of the assignor, after he had ceased to be a party to the policy.

After the recovery of the judgment against the company, the mortgagee commenced a foreclosure and compelled the

mortgagor to pay the debt. The mortgagor then gave notice to the company that they must pay the judgment to him, and threatened to issue execution against them. And thereupon the company made a motion in the Supreme Court for a perpetual stay of execution upon the judgment against them, upon the ground that after the assignment the mortgagor ceased to have any interest in the policy. And the court following out their decision in its logical consequences, granted the motion and ordered a perpetual stay of execution. (9 *Wend.*, 474.) SAVAGE, Ch. J., again giving the opinion, stated that the only ground upon which the recovery in the Superior Court could be upheld, was that Bolton, the mortgagee, was the party in interest in the suit; that Roberts, the nominal plaintiff, had no interest in the policy, nor in the moneys recovered, and that payment of the mortgage therefore gave him no interest in the judgment; that after the assignment the mortgagee held two separate securities for the same money, and having received satisfaction from the assignor, it therefore, had no right to receive but one satisfaction, and enured to the benefit of the company, and discharged the judgment.

No appeal was taken from the judgment affirming the judgment of the Supreme Court, but an appeal was taken from the order perpetually staying execution, to the Court for the Correction of Errors; the order was reversed by that court (17 *Wend.*, 631), and the whole principle upon which both decisions in the Supreme Court were based, was entirely repudiated. The court held, EDWARDS, Senator, delivering the opinion, that the judgment in the Supreme Court not having been appealed from, must be deemed valid and binding upon the parties, but he entirely repudiated the doctrine upon which it was based, and held that Robert, the mortgagor, was the party substantially interested in the policy and in the recovery; that the policy and judgment thereon was only held by Bolton, as collateral security, reverting to Robert upon his paying up and satisfying the mortgage debt. In

fine, the decision of the Court for the Correction of Errors, was in precise accordance with the principles which I have already suggested as applicable to the assignment of a policy, by a mortgagor to his mortgagee, as collateral security for the debt. As I understand its force and effect, it substantially overruled the decision of the Supreme Court in affirming the judgment of the Superior Court. As there was no direct appeal from that judgment, the Court of Errors was bound to assume it to be a valid, existing judgment, but the court utterly repudiated the doctrine of the court below, the only doctrine upon which it was or could be based. Instead of being an authority, therefore, for the judgment of this court in *Tillou* v. *The Kingston Mutual Insurance Company*, it was an authority directly against it.

In the latter case, there was an insurance in the name of three joint owners of the premises. The policy was afterwards assigned to the mortgagee of the same premises as collateral security for the payment of the mortgage debt, with the consent of the company. The question arose in the Supreme Court upon the effect of a transfer by one of the owners to his coöwners; the policy containing a prohibition against alienation. Judgment was had against the company. BARCULO, J., who gave the opinion in the Supreme Court, placed his decision principally upon the ground that the transfer by one joint owner of his interest to his coöwner was not within the prohibition in the policy. In this I think he was right; but the case was afterwards brought into this court by appeal and the judgment affirmed expressly, as it seems, upon the grounds upon which the decision of the Supreme Court was placed in *Roberts* v. *Traders' Insurance Company*. FOOT, J., who delivered the opinion in this court, assumed to follow that decision as authority. He did not seem to suppose that the force of that decision, as a precedent, was at all weakened by the decision in the Court for the Correction of Errors, but rather strengthened and confirmed. He says, alluding to the decision of the latter

The Buffalo Steam Engine Works *v.* The Sun Mutual Insurance Company.

court, that " that court *recognized, approved and substantially affirmed* the judgment of the Supreme Court." He then adopts substantially the language of Chief Justice SAVAGE, and says, " that the assignment, with the assent of the company, creates new and mutual relations and rights between the assignee and the insurers, which, on the plainest principles of law and justice, cannot be changed or impaired by the acts of a third person over whom the insured party has no control." The position here taken has already been discussed. It might be said in addition that if the mortgagee is not satisfied to take the assignment of the policy subject to the conditions contained in it he may decline it. The company clearly makes nothing by the assignment. It receives no additional premium, but consents to the assignment for the accommodation of the assignor and assignee merely. What injustice, therefore, there can be in its insisting that the terms and conditions of the policy shall be fulfilled, whoever may be entitled to receive the money in case of loss, is not so obvious to me as it seemed to the learned judge. But such is the decision of the court in that case. Instead of following the principles laid down by the Court of Errors in *Robert* v. *The Traders' Insurance Company*, as the learned judge professes to do, he substantially overrules and repudiates them. . This appears still more manifest from the modification which was made in this court of the judgment in the court below. In the court below, the assignors, in whose names as plaintiffs the action was prosecuted, recovered some $2,500, the full extent of the loss. If they were entitled to recover at all and were still interested in the policy, they were clearly entitled to recover that amount subject to the application of $2,000, the amount of the mortgage debt, to the payment of that debt, the remainder belonging to them. But, upon the assumption that by the assignment the plaintiffs became divested entirely of all interest in the insurance, and that the mortgagee was not bound to account to them for the amount received, the

recovery should of course have been limited to $2,000, the amount of the mortgage debt. The court, acting upon this assumption, corrected the error of the court below in giving judgment for the entire loss, by reducing the judgment to $2,000. This modification shows that the decision was not put upon any loose idea that it would be unjust to allow the interest of the assignee to be affected by acts of the assignor after the assignment, although the latter still had an interest in the policy, but that it must have been placed upon the broad ground taken by Judge SAVAGE in *Roberts* v. *The Traders' Insurance Company*, that the mortgagor's interest was entirely gone by the assignment, and that the mortgagee was in precisely the same position as if he had himself originally procured the insurance as mortgagee and paid the premium thereon. It was therefore in effect a reversal of that case as it was adjudicated in the Court for the Correction of Errors.

But the question now for our decision is, whether this court will adhere to its decision in the case of *Tillou* v. *The Kingston Mutual Insurance Company*, based, as it manifestly was, upon an entire misapprehension of the decision in the late Court for the Correction of Errors. This court in that case professed to follow that decision, while it actually repudiated the principles upon which it was based, and affirmed principles directly opposed to it. Under such circumstances, it seems to me it should have but little weight with this court as authority. I appreciate the importance of giving all due force to the maxim, *stare decisis*, especially where, as in this case, pecuniary interests to a large amount may be affected. But it appears to me that to sustain the principles upon which that decision was based, and upon which it must be sustained, if sustained at all, will be not only adopting an exceptional rule to be followed by the courts of this state alone, but will be engrafting upon the law of insurance an excrescence, which, carried out in its legal consequences, must materially mar the symmetry of the law upon that subject.

I am, therefore, of the opinion that the judgment of the Superior Court should be reversed, and a new trial granted; costs to abide the event.

SELDEN, ROOSEVELT, and STRONG, Js., dissented; all the other judges concurring,

Judgment reversed and new trial ordered.