ROBERT MOULTHROP *v.* FARMERS' MUTUAL FIRE INSURANCE COMPANY.*

*Insurance. Conditions as to Alienation and Double Insurance.*

Assumpsit on a policy of insurance against fire, issued in 1871. The policy provided, in accordance with defendant's charter and by-laws, that if the assured should aliene the property without giving defendant notice thereof in writing, the policy should be void, but that if the alienation should be approved by defendant the policy should be thereby confirmed. In 1872, H., the assured and owner of the premises, sold and conveyed the same to R. The deed contained the usual covenants, and provided that if R. should fail to pay H. $1,500, with interest, as soon as he should dispose of the premises, or at all events within five years, the deed should become void; and that H. should retain the insurance as security, and should take well-secured notes at not exceeding five years, or the time of the notes that R. might take when he should sell, in payment of said sum. H. then assigned the policy to R., and defendant approved the assignment, but H. retained the pol-

*Heard at the General Term, October, 1878.

icy in accordance with the condition of said deed. In 1873, H. conveyed the premises by quit-claim deed to the plaintiff, and H. and R. assigned the policy to him to be held as collateral security for the performance of said condition, and defendant approved of the assignment. Afterwards R. sold and conveyed the premises and assigned his interest in the policy to A. and D., and defendant approved thereof. A. and D. sold and conveyed to P., who conveyed to J. H., who conveyed to M., after which the buildings were burned. Of the conveyance to P. and the conveyances subsequent thereto, so far as appeared, the defendant did not have the required notice. *Held,* that the deed to R. gave him a defeasible title, in legal effect such as he would have had if he had taken a deed in common form and executed a mortgage back; and that, therefore, the alienation from A. and D. to P., and the alienations subsequent thereto, avoided the policy, not only as to the holders of the title thereby aliened, but also as to the plaintiff, who was only collaterally interested.

The policy provided also that if the assured procured other insurance without consent of defendant, the policy should be void. M. procured other insurance without defendant's consent. *Held,* that under the circumstances of the case, *q. v.,* the procurement of such further insurance would have avoided the policy, if it had not been already avoided by alienation of the premises.

ASSUMPSIT on a policy of insurance against fire, issued to Norman Hudson, on October 11, 1871. Plea, general issue, and trial by jury, September Term, 1876, Rutland County, WHEELER, J., presiding.

The policy contained a provision in substantial accord with a provision of the defendant's charter and a like provision of its by-laws, which were printed on the back of the policy, as follows:

And if the insured shall, during the life of this policy, alienate, conditionally or by mortgage, or in any way change the title of the property herein insured, this policy shall be void, unless the insured shall give notice thereof to the company in writing ; and when approved by the directors, this contract of insurance is hereby confirmed, the same as if said alterations had not been made.

It was also therein provided that if the risk was in any manner increased by or with the knowledge of the assured or his tenants, notice thereof in writing should be given by the assured, and that—and this provision was in accord with a provision of the charter—if the assured procured other insurance on the property he should obtain the consent thereto of the defendant's directors, or the policy should be void ; and that, if the assured had other insurance, he should in no case, in the event of loss, receive a " greater proportion of the loss or damage sustained than the amount " thereby insured should " bear to the whole amount in-

sured." The by-laws also provided that when buildings were mortgaged at the time they were insured, the insurance might be for the benefit of the mortgagee as collateral security, or, if already insured, the policy might be conditionally assigned to the mortgagee, and further as follows : " And in case of loss, the mortgagee or assignee shall have no greater rights than the party insured, and be subject to the same rules." They also provided that on alienation of insured property the alienee, before confirmation of the policy, should give satisfactory security for the payment of the residue of the premium note given for the policy. When the policy was issued, Hudson was the owner of the premises thereby insured, subject to a mortgage to Moses J. Perkins, for $400, and the interest thereon. On June 7, 1872, Hudson sold and conveyed the premises to John H. Remington. The deed contained the usual covenants, but Hudson expressly assumed the mortgage to Perkins. The deed also contained the following proviso.:

Provided, however, that if the said Remington shall fail to pay me, the said Hudson, fifteen hundred dollars and interest annually from this date, so soon as he shall dispose of and deed away said land, and at all events within five years from this date, then this deed is to become null and void ; I, the said Hudson, fulfilling at the same time my above assumed obligation to provide for said mortgage to said Perkins, and I, the said Hudson, to still retain my insurance against fire on said premises for security of said sum of fifteen hundred dollars, and any other insurance proper to be had or taken on the same, said Remington to negotiate for his own interest in any way consistent with this transaction. And it is further agreed that well-secured notes on time not exceeding five years shall be taken by me, the said Hudson, in payment by said Remington for said sum hereinbefore stipulated to be paid by him, as a condition of this deed, such notes not to be on longer time than those which said Remington shall take in payment for the premises hereby deeded him when he shall sell and deed the same to a purchaser.

Hudson then assigned said policy to Remington, Remington executed his premium note to the defendant, and the defendant approved the assignment, but Hudson retained the policy, in accordance with the condition of said deed. On August 19, 1873, Hudson conveyed the premises by quit-claim deed to the plaintiff, the plaintiff assuming the mortgage to Perkins, and Hudson agreeing that the insurance should " be transferred, and owned by " the

plaintiff; and Hudson and Remington joined in an assignment of the policy to the plaintiff, as follows :

Having sold my mortgage on the buildings within mentioned, and the land whereon they stand, to Robert Moulthrop of Rutland, for fifteen hundred dollars, I hereby assign to him the within policy, to hold as collateral security for the performance of the conditions of said mortgage.

The policy was delivered to, and ever after retained by, the plaintiff. The defendant gave its consent to said assignment and incumbrance on the next day. On September 4, Remington sold, and by quit-claim deed conveyed, the premises to Noah Allen and Albert G. F. Drew. The deed contained the following provision :

It being understood that the said Allen and Drew are to have any and all rights of me, the said Remington, existing by reason of insurance ; and said Remington to pay all taxes assessed on said place on the present grand-list ; and said Remington to have the rents up to the 7th instant, and pay up the interest on said fifteen hundred dollars incumbrance to the said Moulthrop to the said 7th of September.

On September 12, Remington assigned by writing on the policy all his interest therein to Allen and Drew, and Allen and Drew executed their premium note to the defendant, and the defendant assented to the assignment. Both the deed and the assignment recognized an incumbrance on the premises of $1500 to the plaintiff. On January 30, 1874, Allen and Drew conveyed the premises to Alpha H. Perkins, wife of E. G. Perkins; on March 12, 1875, Perkins and wife conveyed to John Hines; Hines on the same day conveyed to Michael Murphy ; and on March 29, Michael Murphy conveyed to Patrick Murphy. All of the conveyances subsequent to the conveyance from Remington to Allen and Drew were by quit-claim deed, except the last, which was by deed of warranty, and contained the usual covenants, but with the following exception : "Except a mortgage of fifteen hundred dollars and interest, held by Robert Moulthrop, which said grantee assumes and is to pay." On March 30, the defendant, on application of Michael Murphy, who was the owner of the premises when the application was made, cancelled a duplicate of the policy in question which had been issued on October 13, 1873, to Allen and Drew, on their representation that the original was lost. On March 31, Patrick Murphy procured another policy of insurance

on said premises for $3,000 from the Springfield Fire & Marine Insurance Company. On April 19, the buildings were destroyed by fire, the last-mentioned policy being then in possession of Murphy and uncancelled. Of the conveyance to Perkins and conveyances subsequent thereto, it did not appear that the defendant had the notice provided for by the policy, &c. It appeared that the plaintiff paid the mortgage to Perkins, that the transfer of the policy to the plaintiff was written by an agent of the defendant, that the plaintiff did all that the agent suggested as necessary to secure the insurance to him, that the agent did not usually require a new note in such cases, and that none was required or taken of the plaintiff. It appeared also that the premises were unoccupied when the buildings were burned, and that they had been for three months or more, with the knowledge of the plaintiff, but without the knowledge or consent of the defendant; that they were vacant when the original policy was issued, and vacant about half of the time afterwards, although due diligence had been used to get tenants; and that when they were vacant the risk was largely increased. It appeared also that the plaintiff had no knowledge until after the buildings were burned that the original policy was said to be lost, nor that the duplicate was applied for, or issued, or cancelled, and that he ever relied on the policy in question. There was evidence tending to prove that the buildings when destroyed were worth $2,500.

The court was requested to direct a verdict for the defendant, for that the policy was avoided by alienation of the premises by Allen and Drew and subsequent grantors without assignment of the policy and confirmation by the defendant, and by procurement of other insurance without consent of the defendant, and by the to-the-defendant unknown vacancy of the premises; for that the policy was cancelled by cancellation of the duplicate; and for that the plaintiff, being only a conditional assignee of the policy, could not maintain an action thereon in his own name. It was also contended that if the plaintiff was entitled to recover, he was entitled to recover *pro rata* only, according to the provisions of that clause in the policy referring to further insurance. The court refused to direct a verdict, but charged that if the occupation was such as

might fairly and reasonably have been expected when the insurance was effected, the verdict should be for the plaintiff, but that if it was materially and substantially different, the verdict should be for the defendant; and that, if the plaintiff was entitled to recover, he was entitled to recover two thirds of the fair value of the house, but not more than $1,500. To the refusal to direct a verdict, and to the charge, the defendant excepted.

*S. Wells, S. C. Shurtleff*, and *W. G. Veazey*, for the defendant.

The alienation of the premises without compliance with the provisions of the policy and charter as to confirmation to the alienee, avoided the policy. *Tittemore* v. *Vt. Mutual Fire Insurance Co.* 20 Vt. 546. The conveyance to Remington was a conveyance of the fee, not a mere conditional sale. *Bayley* v. *Bailey*, 5 Gray, 505; *Woodward* v. *Pickett*, 8 Gray, 617; *Page* v *Foster*, 7 N. H. 392; *Wharf* v. *Howell*, 5 Binn. 499. If the provision of defeasance was intended to create a mortgage, the want of mutuality would not prevent that effect. 1 Washb. Real. Prop. 482; *Murphy* v. *Calley*, 1 Allen, 107. But there was no lack of mutuality. If the plaintiff procured the policy to be assigned to him by representing himself as mortgagee, he is estopped from claiming otherwise. The alienation affected the plaintiff the same as the assignor. *Home Mutual Fire Insurance Co.* v. *Hamlin*, 1 Ins. Law. Jour. 818. See *Pupke* v. *Resolute Fire Insurance Co.* 17 Wis. 389; *State Mutual Fire Insurance Co.* v. *Roberts*, 31 Pa. 438, and cases *passim*. *Grosvenor* v. *Atlantic Fire Insurance Co.* 17 N.Y. 391, overrules previous New York cases holding otherwise. In the transfer to the plaintiff no new contract was created between him and the defendant. *Franklin Savings Institution* v. *Central Mutual Fire Insurance Co.* 119 Mass. 240, and other cases. Hence, cases of the class of *Foster* v. *Equitable Mutual Fire Insurance Co.* 2 Gray, 216, do not apply. There is no ground to claim a waiver of the giving of premium note by the plaintiff. *Ashworth* v. *Builders' Mutual Fire Insurance Co.* 3 Ins. Law Jour. 489. It could not be waived by the defendant's agent or secretary. *Belleville Mutual Insurance Co.* v. *Van Winkle*, 4 Bennett Cas. 269.

The cancellation of the duplicate was a cancellation of the original. *Bowditch Mutual Fire Insurance Co.* v. *Winslow*, 4 Bennett Cas. 167. The procurement of other insurance avoided the policy, unless Murphy had no insurable interest, but he had such an interest. *State Mutual Fire Insurance Co.* v. *Roberts*, *supra*, and other cases.

The policy was avoided by the vacancy of the premises. *Franklin Savings Co.* v. *Central Mutual Fire Insurance Co. supra; Harrison* v. *City Fire Insurance Co.* 9 Allen, 231, and cases *passim*. The vacancy increased the risk, and that avoided the policy. *Lyman* v. *State Mutual Fire Insurance Co.* 5 Bennett Cas. 106.

The plaintiff being only a conditional assignee, cannot maintain an action in his own name.

*Prout & Walker* and *D. E. Nicholson*, for the plaintiff.

The conveyance to Remington was conditional. The plaintiff took the legal title. *Lull* v. *Matthews*, 19 Vt. 322. The subsequent conveyances transferred only such interest as Remington had—a right in equity to redeem the premises by paying the plaintiff's claim. The subsequent alienations were therefore immaterial. *Tittemore* v. *Vt. Mutual Fire Insurance Co.* 20 Vt. 546; 1 Phillips Ins. 62, 113, 155, 478; *Boynton* v. *Farmers' Mutual Fire Insurance Co.* 43 Vt. 256.

But suppose the deed to Remington be regarded, as between the parties thereto, as a conveyance and a mortgage, and the deed to the plaintiff as an assignment, &c., of the mortgage, the assignment, &c., and expiration of the law day without payment according to the condition of the deed, gave the plaintiff a legal title, which was not impaired by subsequent alienations. *Jackson* v. *Rhodes*, 8 Cow. 47, 54. The policy, with defendant's consent, could have been assigned to any other party for the security of any other claim. If it had been, and had been confirmed, neither mortgagor nor mortgagee could affect it. *Austin* v. *Downer*, 25 Vt. 558; *Johnson* v. *North British & Mercantile Insurance Co.* 1 Holmes, 117.

Again, the plaintiff took and had the title Hudson had when the policy was issued, and the policy was transferred to him with the

17

defendant's consent. The defendant was thus bound to pay him, unless his claim was otherwise satisfied. The by-law requiring a new note could be and was waived. *Wood* v. *Rutland & Addison Mutual Fire Insurance Co.* 31 Vt. 552, 565 ; *Boynton* v. *Farmers' Mutual Fire Insurance Co.* 43 Vt. 256.

But if the plaintiff be regarded as the assignee of a mortgagee, then he had an insurable interest, and the defendant insured it and obliged itself to pay the loss, unless the plaintiff's claim was otherwise satisfied. The form in which an insurance of this interest is effected is immaterial. Provisions in the policy as to alienations will not avoid it, as they can be applied only to an alienation of the very interest insured. See *Hendrick* v. *Lindsay*, 93 U. S. 143 ; *Manger* v. *Holyoke Mutual Fire Insurance Co.* 1 Holmes, 287 ; *City Fire Insurance Co.* v. *Mark*, 45 Ill. 482; *Tillou* v. *Kingston Mutual Insurance Co.*.5 Seld. 405 ; *Foster* v. *Equitable Mutual Fire Insurance Co.* 2 Gray, 216.

The cancellation of the duplicate did not affect the plaintiff. The plaintiff was not a party to the transaction of issuing or of cancelling.

The opinion of the court was delivered by

REDFIELD, J. The contract of insurance counted upon was made October 11, 1871, by Norman Hudson with the defendant. Hudson then owned the fee of the insured premises, subject to a mortgage to one Perkins for $400 and some interest. On the 7th of June, 1872, he sold said premises to Remington, with covenants of title, and assumed expressly the Perkins mortgage. In this deed was the following proviso, or condition : " Provided, however, that if the said Remington shall fail to pay me, the said Hudson, fifteen hundred dollars and interest annually from this date, so soon as he shall dispose of and deed away said land, and at all events within five years from this date, then this deed is to become null and void ; I, the said Hudson, fulfilling at the same time my above assumed obligation to provide for said mortgage to said Perkins, and I, the said Hudson, to still retain my insurance against fire on said premises, for security of said sum of fifteen hundred dollars, and any other insurance proper to be had

or taken on the same, said Remington to negotiate for his own interest in any way consistent with this transaction. And it is further agreed that well-secured notes on time not exceeding five years shall be taken by me, the said Hudson, in payment by said Remington for said sum hereinbefore stipulated to be paid by him, as a condition of this deed, such notes not to be on longer time than those which said Remington shall take in payment for the premises hereby deeded him when he shall sell and deed the same to a purchaser." The said Hudson assigned said policy to said Remington, who executed his premium note to the defendant, and the same was approved by the company. Hudson retained the policy, in accordance with the condition of said deed, " for security of said sum of fifteen hundred dollars." On the 19th of August, Hudson conveyed the premises by quit-claim deed to the plaintiff; and Hudson and Remington joined in the assignment of said policy to the plaintiff. The assignment written on the policy is in these words : " Having sold my mortgage on the buildings within mentioned, and the land whereon they stand, to Robert Moulthrop, of. Rutland, for fifteen hundred dollars, I hereby assign to him the within policy, to hold as collateral security, for the performance of the conditions of said mortgage." The defendant gave its consent to said " assignment and incumbrance " August 20, 1873. On the 4th of September, 1873, Remington sold by quit-claim deed said premises to Allen and Drew, with this condition : " It being understood that the said Allen and Drew are to have any and all rights of me, the said Remington, existing by reason of insurance ; and said Remington to pay all taxes assessed on said place on the present grand list; and said Remington to have the rents up to the 7th instant, and pay up the interest on said fifteen hundred dollars incumbrance to the said Moulthrop to the said 7th of September." Allen and Drew conveyed said premises to Perkins and wife, January 30, 1874. Perkins and wife conveyed the same to Hines, March 12, 1875, and Hines, on the same day, conveyed the same to Michael Murphy ; and, on the 29th day of the same March, Michael Murphy conveyed the same to Patrick Murphy, with covenants of title, " except a mortgage of fifteen hundred dollars and interest, held by Robert

Moulthrop, which said grantee assumes and is to pay." This policy was cancelled on the application of Michael Murphy, March 30, 1875. And on the 31st of March, 1875, Patrick Murphy procured a policy of insurance on the same property from the Springfield Insurance Company in the sum of $3,000.

Was this policy avoided by the conveyance of the premises from Allen and Drew to Perkins and wife, and by the several *mesne* conveyances to Patrick Murphy ? It is claimed by the plaintiff that in the conveyance by Hudson to Remington the fee of the premises remained in Hudson, and that he conveyed the fee to the plaintiff, and that this case should be controlled by *Tittemore* v. *Vt. Mutual Fire Insurance Co.* 20 Vt. 546. In that case the plaintiff conveyed to Van D'Waters, and took back a re-conveyance at the same time, with the condition that if the grantor should pay the plaintiff $2,000 within three years, the deed should be void. Van D'Waters never paid anything, and never promised to pay anything ; the three years had expired and Tittemore had remained in possession all the while. In this case, Remington paid part of the consideration at the time of purchase, took the possession of the premises, and was subject to the condition that his title would be defeated if he failed to pay a fixed sum within five years. Van D'Waters could obtain title by paying $2,000 within three years. Remington would lose title if he failed to pay $1,500 within five years. Van D'Waters had neither title, possession, nor the right of possession. Remington had actual possession and the right of possession against the world, and title, subject to defeasance. And we do not see how the relation between Hudson and Remington differs in form or legal character from the ordinary case of the conveyance of the absolute title, with mortgage back to secure a portion of the purchase-money. In this case a portion of the consideration was paid, and the defeasance was inserted in the deed of conveyance. In the ordinary case of conveyance and mortgage, the defeasance is inserted in the latter, but both instruments are construed together as one and the same contract, and effectuate the conveyance of a defeasible title to the purchaser. In the Tittemore case Van D'Waters was bound to comply with a condition precedent before he obtained title ; in this case Remington

was bound to comply with a condition subsequent, or he was subject to lose his title. The plaintiff, then, held a mortgage, payable within five years, which had not expired at the time of the loss. It is true that the condition recites that payment is to be made " so soon as he [Remington] shall dispose of and deed away said land, and at all events within five years ", and subsequently, " it is further agreed that well-secured notes on time not exceeding five years shall be taken by me, the said Hudson, in payment . . . not to be on longer time than those which said Remington shall take in payment " for said premises. So that it is doubtful if there had been any breach of the condition. At all events, the case does not show that the plaintiff had made demand of payment, nor that there had been failure to pay the annual interest. Remington was the owner of the premises, subject to a mortgage to Hudson, and Hudson by his quit-claim deed assigned said mortgage to the plaintiff, who held all the rights of Hudson, and no more. And this relation was fully understood by the parties. In the assignment of the policy by Hudson and Remington to the plaintiff it is recited, " Having sold my *mortgage* on the buildings within mentioned . . . I hereby assign to him the within policy to hold as collateral security for the performance of the conditions of said mortgage." It is, therefore, no novel construction of the deed that might work a disappointment of the just expectations of the parties in interest. The plaintiff held this policy as collateral security. He might resort to the policy for the payment of his debt; or to attachment or foreclosure, to enforce payment. The plaintiff, having a pledge of the policy as collateral security for a debt, but no possession or control of the premises, could do no act to avoid the policy. But if Remington saw fit to convert the dwelling-house into a powder-mill or oil-mill, the risk would be enhanced and the policy avoided; so, by force of the charter and by-laws, which are made a part of the contract, and well-settled insurance law, the alienation of the property insured avoids the contract of insurance.

The plaintiff's counsel concede in their brief that Remington became the owner of the equity of redemption in the premises, and was the owner of an insurable interest. It is certain that

Remington was the owner of the policy, subject to the pledge as collateral security for his debt, and if there were a surplus above the debt, it belonged to him ; or if the debt became satisfied in any other way, the policy and its avails were wholly his.   He alone was bound to pay the annual premiums, and, in fact, was the contracting party with the defendant.   It is to be noticed that, by the contract between the parties, the interest in, and avails of, the policy were wholly the mortgagor's ; if paid to the plaintiff, it paid the mortgagor's debt; if in excess of the mortgage, the residue belonged to the mortgagor.   The plaintiff gave no premium note, nor in any way assumed to pay the premium.   The plaintiff did not become a member of the company, and owed no duty to the company.   The proceeds of this policy, in case of loss, were assigned to the plaintiff as collateral security.   Remington was the owner of the policy and its avails, subject to a pledge that its proceeds, in case of loss, should, to the extent of a certain debt, go to pay that debt.   If the plaintiff had insured his mortgage interest in the premises, and paid, or assumed to pay, the premiums, the money received upon that policy for loss would not enure to the benefit of the mortgagor, nor to any extent pay the mortgage debt.   But, in this case, the mortgagor, rightfully in possession, is wholly responsible to the defendant for compliance with all the duties required of the insured by the policy or contract of insurance.   And this is not only a general and necessary rule, but it is an express stipulation in the contract.   The by-laws provide that the insured may conditionally assign the policy to his mortgagee or other person, as collateral security, by complying with certain rules ; and it is expressly stipulated therein that " in case of loss, the mortgagee or assignee shall have no greater rights than the party insured, and be subject to the same rules."

The equity of redemption would seem, from the deeds, to be a valuable property, and a property insured by this policy ; and the deed from Hudson to Remington conveyed, by its own operation, the title in fee subject to defeasance, if the residue of the purchase-money was not paid within five years ; and though the condition, or proviso, was inserted in the deed of conveyance, it vested in Hudson, the grantor, the same right and interest in the

premises as if he had conveyed absolutely, with mortgage back to secure the unpaid balance of the purchase-money. In such case the two deeds would be construed together as the evidence of one contract and transaction. When Allen and Drew conveyed the premises to Perkins and wife, they became devested of all insurable interest in the premises; and, as the policy was not assigned to their grantees, it follows that the insurance by this policy no longer subsisted as to *that* interest in the premises, which we hold was the fee. But in fire insurance the personal character of the insured for care and trustworthiness, is a cardinal consideration, and universally recognized. Hence, the well-established rule, and the express provision in this policy, that the insured cannot convey to a stranger, and make him a member of the company without its consent; and if he aliens the property insured, the contract of insurance comes to an end. It seems not denied that Allen and Drew were the owners of an insurable interest in these premises, which was insured to them in this policy, and that insurance became extinct by their sale of the premises. It becomes, therefore, important to inquire whether, when the policy is avoided by act of the party insured, in possession, and owning the fee of the premises subject to incumbrance, it becomes void, also, as to all persons collaterally interested therein.

We need not discuss whether the case would be in anywise different if the plaintiff, holding the assignment for collateral security for a debt, had guaranteed the payment of the future premiums, and thereby became by new and independent contract a member, or *quasi* member, of the defendant company. No such fact is in this case. The plaintiff had a debt secured by mortgage—a chattel interest, and this policy, assigned to him as further and collateral security; he was under no duty or contract to perform all those duties necessary to be performed to keep the insurance in life and continuing force. The plaintiff had no right of possession or control of the premises. If the contract becomes void by act of the insured, it must be held void as to all persons incidentally or collaterally interested in the policy. If otherwise, then Remington or Allen and Drew might have converted this dwelling-house into a match factory, or powder-house, or even

burned the property purposely, and the defendant company have been without remedy. This cannot be. The plaintiff took this security as it was, with the risk of the continuing duties to be performed by the insured, and must stand upon the rights of the insured. This, we think, is consonant with legal principles, sound reason, and authority. Mr. Flanders in his work on insurance, page 454, after reviewing the cases, says : " The assignee of a policy is subject to all the conditions in the policy, and takes the instrument, with the risk growing out of the conduct of the assignor in violation of his contract ; the assent of the insurers to the assignment does not create a new contract, or vary the terms of the policy ; it only preserves it from forfeiture. Hence, when a policy against fire is assigned to a mortgagee, with the assent of the insurer, in case of loss the assignee cannot recover, if it can be shown that, after the assignment, there was a breach of the conditions by the assignor, such as effecting an additional insurance. In other words, the assignee can only recover when his assignor could have done so had no assignment been made." And Mr. May in his work on insurance, speaking of the assignment of a policy to the mortgagee as collateral security, page 465, says : " It is no part of its purpose to enlarge the engagements of the insurers, nor to waive the conditions on the performance of which their liability depends. It is not to give new privileges to the insured which without it he would not have ; but it is solely for their protection. The assignment does not change the contract. It simply converts one of the parties into a trustee for a third person, and every condition upon which the liability to pay is made to depend, remains as before . . . the original contract with the mortgagor still subsists, and it is his interest which is insured. The assignee must claim in his right, and not in his own. It is only what the mortgagor may have a right to recover under the contract that the assignee can, in any event, claim. If, therefore, the mortgagee, before the loss happens, violates a provision of the policy whereby he forfeits the right to recover, his assignee is equally barred of his remedy." The same author, speaking of those few cases (most of which have been referred to by the defendants), which have held that such

assignee might have greater rights than his assignor, page 461, says : " These cases rest upon the authority of *Traders' Insurance Co.* v. *Roberts,* 9 Wend. 404, and the other New York cases following that, all of which, as we have seen, have been overruled." See *Buffalo Steam Engine Works* v. *Sun Mutual Insurance Co.* 17 N. Y. 401, and the great number of cases cited by the author from Massachusetts, Pennsylvania and other States, and in the English courts.

As we have seen that the insurance was of the house and premises of which the mortgagor and his grantees were the general owners, the alienation of such title avoided this policy. The title of Allen and Drew, by several *mesne* conveyances was vested in Patrick Murphy, subject to a mortgage to Robert Moulthrop of $1500, which said Murphy assumed. Murphy then took out a policy in another company for $3000 on the same property ; and it is said in argument (we have no copy of the policy) that it is expressed in the policy to be for the benefit of this plaintiff to the extent of his mortgage. There is no reason suggested or apparent why this is not a valid subsisting policy. It is quite apparent that Murphy supposed that his new policy was the only insurance on the premises. Although the policy assigned to the plaintiff lapsed when Allen and Drew conveyed away the title, and was never assigned to Murphy, yet, Murphy, for greater caution, had the old policy cancelled with the defendant, and then procured one in another company for twice the amount and for like protection of the plaintiff's mortgage, which he had assumed. Such new policy must have been intended by the parties as an enlarged insurance in substitution for the old policy, which had then come to an end ; and being a valid insurance, that act would have avoided the policy in suit, if it had not ceased to be a binding contract long before.

There are some matters of a technical character that suggest themselves, which we need not discuss. When insured premises are conveyed, and policy assigned to the grantee and confirmed by the insurer, and the grantee assumes the payment of the premiums, it is a new contract, and the right of action is in the assignee. But when the policy states that, in case of loss, it is for

the benefit of the mortgagee or other creditor to the extent of his debt, or, if assigned as collateral security for a debt, and to the extent of his debt, the assignee assuming no duty under the contract, it would seem, upon authority, that the contract is between the insurer and the mortgagor, who has the right of action, and will be held as the trustee for the mortgagee. But this question we do not decide.

*Judgment reversed, and cause remanded.*