The allegation in the answer in this case is, that before the time of issuing the policy, the steamer had been registered as a vessel of the United States, pursuant to the provisions of the act of Congress of December 31, 1792, and that she was, subsequent to such registry and insuring, sold by her then owner to Fortier, who was an alien; and that the title was fraudulently taken in the name of plaintiff, who had at the time no insurable interest.
The evidence entirely fails to prove a registry, but, on the contrary, shows that the steamer was an enrolled vessel. The enrollment did not authorize her to engage in the coasting or foreign trade. A license was necessary for that, in addition to the enrollment. She had, therefore, no certificate of registry; and, of course, could not surrender any. But it is insisted *Page 186 
that she was forfeited under the 2d 6th, and 32d sections of the act of 18th February, 1793. The certificate of enrollment, produced on the trial, shows that she was enrolled, as well under the act of 1793 as under the act "to regulate the foreign and coasting trade, on the northern, northeastern and northwestern frontiers of the United States, and for other purposes," passed March 2, 1831. That act provides, in its 3d section, that vessels of the United States, navigating the waters on those frontiers, otherwise than by sea, "shall be enrolled and licensed in such form as may be prescribed by the Secretary of the Treasury, which enrollment and license shall authorize any such boat, ship, or other vessel to be employed either in the coasting or foreign trade, and no certificate of registry shall be required for vessels so employed on said frontiers." Then follows this proviso: "That such boat, sloop, or vessel shall be, in everyother respect, liable to the rules, regulations and penalties now in force relating to registered vessels on our northern, northeastern and northwestern frontiers."
A construction has been given to this proviso, in the case of the Black Hawk (unreported decision of Judge CONKLING, in the District Court of the United States for the Northern District of New York), where it was decided that a vessel, enrolled and licensed under the act of 1831, is "not the less a licensedvessel because she has become entitled to the privileges of aregistered vessel;" and it was adjudicated that the sale itself forfeited the vessel under the 32d section of the act of 1793.
Assuming, then, that the case might fall within the provisions of the sections claimed, it is proper, for a moment, to examine the allegations in the answer, and the facts proved.
The 6th section declares, that "after the last day of May (then) next, every ship or vessel found trading, without being enrolled or licensed, shall be forfeited," c., under certain provisions in the section enumerated.
The answer does not allege, nor is there any proof in the case, that the steamer was "found trading" in articles such as the section forbids. *Page 187 
The 32d section enacts "that if any licensed ship or vessel shall be transferred, in whole or in part, to any person who is not, at the time of such transfer, a citizen of and resident within the United States, or if any such ship or vessel shall be employed in any other trade than that for which she is licensed, or shall be found with a forged or altered license, or one granted for any other ship or vessel, every such ship or vessel, with her tackle, apparel and furniture, and the cargo found on board of her, shall be forfeited."
The only allegations in the answer are, that the steamer was registered and that she was transferred to an alien — entirely different from the proof. The answer, perhaps, might have been amended so as to conform the proofs to it; but then it would not have been sufficient. There is no proof that the steamer was employed in any other trade than that for which she was licensed. There is no averment or proof that she was even licensed. There is no forfeiture declared for transferring an enrolled vessel.
At all events, at the time of the insurance, the plaintiff had clearly an insurable interest. The sale was on the 13th, and the insurance on the 18th of September. The vessel was not forfeited, if at all, until the lapse of seven days after the sale, and then by reason of the failure to surrender her certificate, if within the United States, as it does not appear she was, at the time of the sale.
It cannot be answered to this position that the plaintiff had not an insurable interest at the time of the loss. The vessel, if forfeited, would be still subject to the mortgages; and plaintiff had an interest to that amount, as he had warranted to keep her insured. (17 N.Y., 404.)
It is said that if we should hold the vessel forfeited, we are controlled by the case of Fontaine v. The Phœnix InsuranceCompany (11 John., 297), as to the point that the defendant may avail itself of the forfeiture, if there was one, by way of defence. The section declares the vessel forfeited, it is true; but I am not able to see the justice of permitting a third party to set it up to defeat a fair contract on its part, the consideration *Page 188 
for which it has been allowed to receive and appropriate. It is not necessary, however, to pass upon this point, and I forbear further comment upon that case.
Judgment should be affirmed.
All the judges concurring,
Judgment affirmed.