## Case No. 16,240.

### UNITED STATES v. The SCIOTA.

[5 West. Law Month. 29.]

District Court, N. D. New York. June 4, 1862.

SHIPPING — LICENSE AND ENROLLMENT — SALE TO FOREIGNER—VIOLATION OF REGULATIONS—FORFEITURE—CONSTRUCTION OF STATUTES.

[1. The provision in the third section of the act of 1831 (4 Stat. 487, which regulates the foreign and coasting trade on the northern, northeastern, and northwestern frontiers) authorizing vessels not registered, but merely licensed and enrolled for the coasting trade and fisheries, to engage in foreign commerce, without a certificate of registry, providing, however, that in all other respects they shall be liable "to the rules regulations and penalties, now in force relating to registered vessels," etc., does not render applicable to such licensed and enrolled vessels the provision in the sixteenth section of act of 1792 (1 Stat. 295, which relates only to registered vessels) declaring a forfeiture of any vessel sold or transferred to a foreigner, unless such sale or transfer is made known by delivering up to the collector the certificate of registry within seven days from such sale or transfer. A provision for a forfeiture should not be imported into a statute by construction.]

[2. A vessel which has been enrolled and licensed under the act of 1831, but whose license has become void by reason of a subsequent sale, is no longer a licensed and enrolled vessel, so as to be subject to forfeiture by her sale in whole or in part to a foreigner, in violation of section 32 of that act.]

[3. In the act of 1793 (1 Stat. 305), relating to the enrolling and licensing of vessels for the coasting trade and fisheries, the provision (section 2) that the same requisites shall in all respects be complied with as are necessary in registering vessels (under the act of 1792) does not render applicable thereto the provision in the sixteenth section of the act of 1792, declaring a forfeiture of the vessel in case the parties applying for registration shall knowingly swear falsely in respect to any matter of fact.]

[This was a libel of information against the propeller Sciota (William Williams, Andrew J. Rich, and Henry Martin, claimants), alleging a forfeiture because of a violation of the laws relating to enrolled and licensed vessels.]

W. A. Dart, U. S. Atty., and John L. Talcott, for the United States.

John Ganson, for claimants.

HALL, District Judge. This is a libel of information against the Sciota, founded upon a seizure made by the collector of customs for the port of Buffalo Creek. The libel of information, as amended, contains five counts. The first three allege as a cause of forfeiture that the Sciota was a duly enrolled and licensed vessel; that she was sold and transferred to citizens of Canada, subjects of the queen of Great Britain and Ireland; and that the certificate of enrollment was not delivered up to the collector of the customs after such sale and transfer, or the fact made known to him in any manner within the time in such counts mentioned. These counts appear to have been inserted under the impression that the sixteenth section of the act of 1792, entitled "An act concerning the registering and recording of ships or vessels" (1 Stat. 295), was applicable to vessels enrolled and licensed under the acts of 1793 and 1831; and that on the sale of an enrolled and licensed vessel to a foreigner the certificate of enrollment must be delivered up to the collector within the time prescribed for the delivery of the certificate of registry, on the sale to a foreigner of a registered vessel. This makes it necessary to inquire whether that section is applicable to enrolled vessels; and the question depends upon the construction to be given to the act of 1793 and 1831, under which the Sciota was, at different times, enrolled and licensed.

The act of 1792 relates to registered vessels only. The sixteenth section provides that, "if any ship or vessel heretofore registered, or which shall heretofore be registered as a ship or vessel of the United States, be sold or transferred in whole or in part by way of trust, confidence or otherwise to a subject or citizen of any foreign prince or state, and

such sale or transfer shall not be made known in manner hereinafter directed, such ship or vessel together with her tackle, apparel, and furniture shall be forfeited," etc. The manner in which the sale or transfer is to be made known in compliance with the provisions is obscurely indicated, rather than distinctly declared, by the seventh section of the same act. This section provides that, previous to the registry of any ship or vessel, a bond shall be executed containing a condition, among others, that if any foreigner or any person or persons for the use and benefit of such foreigner shall purchase or otherwise become entitled to the whole or any part or share of or interest in such ship or vessel, the same being within a district of the United States, the said certificate (of registry) shall in such case, within seven days after such purchase, change, or transfer of property, be delivered up to the collector of said district, and that if any such purchase, change, or transfer of property shall happen when such ship or vessel shall be at any foreign port or place or at sea, then the master or person having charge or command thereof shall, within eight days after his arrival within any district of the United States, deliver up said certificate to the collector of such district.

The act of 1793, entitled "An act for enrolling and licensing ships or vessels to be employed in the coasting trade and fisheries, and for regulating the same" (1 Stat. 305), provides for the enrollment and license of vessels, and authorized to engage in the coasting trade and fisheries during the continuances of their respective licenses; but they were not by that act authorized to engage in the foreign trade of the United States.

American vessels, when duly registered under the act of 1792, could engage in foreign trade with certain privileges and advantages denied to foreign vessels. But enrolled and licensed vessels could not engage in foreign commerce until the passage of the act of 1831, entitled "An act to regulate the foreign and coasting trade on the northern, northeastern, and northwestern frontier of the United States, and for other purposes" (1 Stat. 487). The third section of that act provides that, "from and after the passage of this act, any boat, sloop or other vessel of the United States navigating the waters on our northern, northeastern and northwestern frontiers otherwise than by sea shall be enrolled and licensed in such form as may be prescribed by the secretary of the treasury; which enrollment and license shall authorize any such boat, sloop or other vessel to be employed in either the coasting or foreign trade; and no certificate of registry shall be required for vessels so employed on said frontiers: provided that such boat, sloop or vessel shall be in every other respect liable to the rules, regulations and penalties now in force relating to registered vessels on our

northern, northeastern and northwestern frontiers." Under this statute, the secretary of the treasury has provided (Regulations 1857, p. 113, arts. 156, 157) that the same proceedings, requirements and forms are to be pursued and complied with as in the case of the enrollment and licensing of ships or vessels under the general law regulating the issue of that description of marine papers, except that the enrollment and license shall be in the form by him particularly prescribed which is substantially the form prescribed in other cases of enrollment and license, with the addition of a particular reference to the act of 1831.

The Sciota had never been a registered vessel, but she had been at different times enrolled and licensed under the act of 1831 (hereafter more particularly referred to); and, while her license continued in force, she was authorized to engage in trade with Canada under the last-mentioned act. She was nevertheless, although authorized to engage in foreign trade, and subject to the rules, regulations, and penalties imposed by' the third section of the act of 1831, above cited, an enrolled and not a registered vessel. Wilkes v. People's Fire Ins. Co., 19 N. Y. 184; and the case of The Black Hawk, before Judge Conklin [Case No. 1,469], there cited. Not being a registered vessel, she had no certificate of registry to deliver up, and a sale of her to a foreigner could not, therefore, be made known in the manner required by the sixteenth section of the act of 1792. The provisions of that section, which in express terms apply to registered vessels only, cannot be extended by judicial construction to a case like that now under consideration, so as to condemn a vessel to forfeiture for the omission of an act which it was utterly impossible to perform. But the third section of the act of 1831, above quoted, provides that vessels enrolled and licensed under that act shall be in every other respect (that is except as to their enrollment and license and their requirement of certificate of registry) liable to the rules, regulations, and penalties now in force relating to registered vessels on our northern, northeastern, and northwestern frontiers. The question whether this provision has extended the provisions of the sixteenth section of the act of 1792 to this case is perhaps not free from doubt.

It may possibly be doubtful whether a forfeiture of the vessel should be held to be included in the term "penalties," used in a penal statute, but the terms, rules, and regulations in the act of 1831 are probably sufficient to include the provisions by which a forfeiture was declared for a violation of such rules and regulations. There are, however, other and very serious objections to a construction which would extend the provisions of the sixteenth section to the present case. The fact already referred to, that in the case of an enrolled vessel a sale or transfer thereof cannot possibly be made

known in the manner required by this section, is quite enough to prevent the application of its provisions in a penal action. And as all licensed vessels were already subject to forfeiture under the thirty-second section of the act of 1793 whenever transferred in whole or in part to a foreigner (as will be hereafter more particularly mentioned), it may well be presumed that congress intended the thirty-second section of the act of 1793, and not the sixteenth section of the act of 1792, should give the rule in regard to the forfeiture of vessels enrolled under the act of 1831, in case such vessels should be transferred to a person or persons not being citizens of the United States. Again, the proviso of the third section of the act of 1831 in express terms only applies to the boats, sloops, and vessels mentioned in the preceding portion of that section, and therefore only applies to vessels enrolled and licensed under the provisions of that act; and as the Sciota was not a licensed vessel at the time of the alleged sale (as will be hereafter more particularly stated), this third section of the act of 1831 does not make the sixteenth section of the act of 1792 applicable to that vessel.

For these reasons, no forfeiture can be decreed under the first three counts in the libel of information in this, so far as the same must depend upon an alleged violation of the sixteenth section of the act of 1792.

The fourth count is substantially like the first three, except that it avers that the Sciota was transferred to a foreigner, and that her license was not surrendered or notice given of such sale or transfer. The reasons already given are sufficient to show why no decree upon this count can be based upon the sixteenth section of the act of 1792.

But there is another question arising on these counts. They aver that the Sciota was duly enrolled and licensed for the coasting trade, and they allege, in substance, that she was sold and transferred to a foreigner, although they contain other averments intended to bring the case within the sixteenth section of the act of 1792. The other averments may be rejected as surplusage; and it was therefore contended at the hearing that the vessel was forfeited under the thirty-second section of the act of 1793, which provides that if any licensed ship or vessel shall be transferred in whole or in part to any person who is not at the time of such transfer a citizen of, and resident within, the United States, or if any ship or vessel shall be employed in other trade than that for which she is licensed, or shall be found with a forged or altered license, or one granted for any other ship or vessel, every such ship or vessel. with her tackle, apparel, and furniture, and the cargo found on board her, shall be forfeited. In order to entitle the United States to a decree of forfeiture under this section, it is necessary to show a transfer, and that the vessel was a licensed vessel at the time of such transfer. It appeared upon the hearing that although the Sciota had been licensed, before the alleged sale, to a foreigner or foreigners, such license had become void some time prior to such sale, by reason of her sale and transfer from the Western Transportation Company, (her owner at the time of her license,) to the claimants in this suit. She was not therefore a licensed vessel, within the meaning of the thirty-second section above quoted (section 5, Act 1793; 1 Stat. 30; Two Friends [Case No. 14,289]; section 46, p. 30, of Regulations under the Revenue Laws published in 1857); and this was substantially conceded by the learned counsel for the government. There can therefore be no condemnation under the thirty-second section on either of the first four counts of the libel.

The fifth and last count of the libel of information presents other questions, which will now be considered. It alleges in substance that on the 2d of May, 1860, the Sciota was owned by the claimants, and that an enrollment of the vessel was on that day applied for; that one of the claimants thereupon, and for the purpose of procuring an enrollment of such vessel, made oath, as required by law, that the claimants were the sole owners of the Sciota, and that there was no subject or citizen of any foreign prince, directly or indirectly, by way of trust or otherwise, interested therein, or in the profits or issues thereof; that thereupon the vessel was enrolled and licensed; and that such affidavit was untrue, to the knowledge of the party making the same; certain subjects of her majesty the queen of Great Britain and Ireland, and citizens of Canada, being interested in the said vessel, and in the profits and issues thereof, to the knowledge of such party. This count is based upon the fourth section of the act of 1792, which requires, as a condition precedent to the registry of a ship or vessel, that an oath or affirmation shall be taken and subscribed, containing the statements contained in the affidavit referred to, and which further provides that, in case any of the matters of fact in the said oath or affirmation alleged which shall be within the knowledge of the party so swearing or affirming shall not be true, there shall be a forfeiture of the ship or vessel, together with her tackle, furniture, and apparel in respect to which the same shall have been made, or of the value thereof, to be recovered, with costs of suit, of the person by whom such oath or affirmation shall be made (1 Stat. 279, § 4); and also upon the second section of the act of 1793, which provides that, in order for the enrollment of any ship or vessel, she shall possess the same qualifications, and the same requisites in all respects shall be complied with, as are made necessary for registering ships and vessels (by the act of 1792), and the same duties and authorities are hereby given and imposed on all officers, respective-

ly, in relation to such enrollments, and the same proceeding shall be had in similar cases touching such enrollments, and the ships or vessels so enrolled, with the master or owner or owners thereof, shall be subject to the same requisites as are in those respects provided for vessels registered by virtue of the aforesaid act. This act of 1793 does not contain any provision expressly declaring a forfeiture of the vessel in case the oath or affidavit shall be false, but provides for the indictment and punishment of any party who shall knowingly swear falsely in making such affidavit. But it was contended at the hearing that the provision above quoted extended the provisions for forfeiture above set forth to the case of vessels enrolled under the act of 1793.

This raises a question in regard to the construction of those provisions, in respect to which, and to the last count in the libel of information, I shall adopt the language of the late Justice Story in the case of The Two Friends [supra], as follows: "As to the last count I doubt if it alleges any matter to which the law has attached any forfeiture. It is true that the act for registering vessels, in section 4, declares that a false oath by the owner in any matter of fact required to be sworn, in that section, previous to the grant of a registry, shall work a forfeiture of the vessel. And the act for enrolling and licensing vessels in the coasting trade and fisheries, in section 2, provides that, in order to obtain an enrollment, vessels shall possess the same qualifications, and the same requisites in all respects shall be complied with, as are made necessary to the registry of vessels, and the same duties and authorities are given and imposed on officers, and the same proceedings are to be had in similar cases touching such enrollment; and the ships or vessels so enrolled, with the masters and owners thereof, are to be subject to the same requisites as are provided for the registry of vessels. But it is nowhere declared that a violation of these provisions shall be followed with like penalties and forfeitures. On the contrary, the coasting act, in section 30, has substantially declared that the false swearing in any oaths required by that act shall be punished as willful perjury. Now, it is certainly not the duty of the court to seek out new modes of punishment where the legislature has prescribed a specific punishment in its own direct terms; nor can it be proper to pronounce that to be a qualification, requisite duty, or proceeding within the act which is a forfeiture for a willful violation of the same act." This is directly in point; and confirming, as it does, my own impression in respect to the question under consideration, I do not deem it necessary to give other reasons for my conclusion.

To say that there is very great doubt whether there could be a decree for the United States upon the last count in the libel of information in case the affiant's knowledge of the falsity of the affidavit therein referred to had been established is not putting the case too strongly in favor of the claimants. The supreme court of the United States in the case of The Burdett, 9 Pet. [34 U. S.] 682, declared that no "individual should be punished for the violation of a law which inflicts a forfeiture of property, unless the offence shall be established beyond reasonable doubt"; and it was very properly declared by Mr. Justice Livingston in the case of The Enterprise [Case No. 4,499], that a court has no option where any considerable ambiguity arises on a penal statute, but is bound to decide in favor of the party accused. I shall therefore dismiss the libel in this case, upon the question of law already discussed without inquiring whether the affidavit made on the enrollment of the Sciota was true or false. The libel is dismissed, but there will be the usual certificate of probable cause.