THE ILLINOÍS MUTUAL FIRE INSURANCE COMPANY

*v.*

PANTALI FIX, for use, etc.

53  186
129   61
30a 431

1.  INSURANCE—*assignment of policy to a mortgagee—violation of terms of policy by the assignor.*  Where the owner of property, upon which he has obtained an insurance, executes a mortgage thereon, and assigns the policy to the mortgagee, as collateral to the mortgage, though with the consent of the insurer endorsed upon the policy, the assignee takes it subject to the conditions expressed upon its face, or necessarily inhering in it, and no recovery can be had merely in consequence of the equities of the assignee, if the assignor has lost the right to recover by violating the terms of the contract.

2.  So, in an action by the assured, for the use of his assignee, the mortgagee, against the company, to recover for the loss of the building insured, by fire, it is competent for the defendants to prove that the plaintiff, the assignor, set the building on fire.

3.  SAME—*effect of a second insurance, without notice to the first insurer.*  A party obtained insurance upon a dwelling house and brewery attached, two thousand two hundred dollars, and upon fixtures in brewery and cellar, eight hundred dollars.  The policy provided that if there should be insurance in any other office, the policy should be void, unless the company should consent to such double insurance.  In an action on the policy, it was *held*, the court below improperly refused to instruct the jury that if the assured, after procuring this insurance, procured other insurance in another company, upon the fixtures mentioned in the policy, and gave no notice thereof to the defendants, then in making up their verdict they should exclude the amount insured in the policy upon the fixtures.

APPEAL from the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

This was an action of assumpsit, brought in the court below, by Pantali Fix, for the use of Henry F. Mayer, to recover upon a policy of insurance, issued by the Illinois Mutual Fire Insurance Company.  The insurance was upon a dwelling house and brewery attached, two thousand two hundred dollars, and upon fixtures in brewery and cellar, eight hundred dollars,

total three thousand dollars. The grounds upon which the principal question in the case arises, are fully set forth in the opinion of the court.

In reference to a second insurance on the property, the charter of the defendant company contained this clause, which was made a part of the policy : "If insurance on any house or building shall be and subsist in said company and in any other office, or from and by any other person or persons at the same time, the insurance made in and by said company shall be deemed and become void, unless such double insurance subsist by and with the consent of the directors, signified by endorsement on the back of the policy, signed by the president and secretary." On the trial, the defendants asked the court to give the jury this instruction :

"If the jury believe from the evidence that Pantali Fix, after procuring the insurance in this cause, procured other insurance in the Ætna Insurance Company, upon the fixtures mentioned in the policy, and that he gave no notice of such insurance to the defendant in this cause, then the jury, in making up their verdict, will exclude the amount insured in the policy upon the fixtures." Which instruction the court refused to give, and the defendants excepted. The trial resulting in a verdict and judgment for the plaintiff, the defendants appealed.

Messrs. BILLINGS & WISE, for the appellants.

In this case the property insured was mortgaged by the assured, and the policy assigned, with the consent of the company, to the mortgagee. On the trial, the company proposed to prove that the assured, the assignor, set the building on fire, whereby the loss occurred. The court below refused to admit this testimony, and upon this ruling the principal question arises, whether, upon the assignment of the policy to the mortgagee, with the consent of the insurer, as collateral to the mortgage, its validity can be destroyed by acts done by the assignor in violation of its conditions.

We hold the affirmative of this proposition, and insist the testimony offered, to prove that the assured set fire to the building, was admissible. ·

This question has never been decided in this court, and we refer to authorities in other States. The case of *Tillon* v. *Kingston Mutual Insurance Company*, 1 Seld. 405, is the first case which decides that no act of the assignor of a policy, can affect it in the hands of the assignee. This case was evidently decided without much consideration by the court, and was afterwards overruled, upon a very thorough and elaborate review of all the authorities, by the court of appeals in the same State, in the cases of *Grosvenor* v. *Atlantic Fire Insurance Company, of Brooklyn*, 17 N. Y. 391, and *Buffalo Steam Engine Works* v. *Sun Mutual Insurance Company*, 17 Ib. 401.

These cases expressly decide that the contract is with the mortgagor, and for the insurance of his interest, and the mortgagee can recover only when the mortgagor could have done so, had the money been payable to himself instead of being payable by assignment to the mortgagee. We find the same doctrine fully substantiated by the following authorities, to wit: *Carpenter* v. *Providence Washington Insurance Company*, 16 Peters, 495 ; *King* v. *State Mutual Fire Ins. Co.* 7 Cush. 5 ; *Macomber* v. *Cambridge Mutual Ins. Co.* 8 Cush. 133 ; *Long* v. *Manufacturing Ins. Co.* 8 Gray, 28 ; *Young* v. *Eagle Fire Ins. Co.* 14 Gray, 150 ; *Fogget et al.* v. *Middlesex Ins. Co.* 10 Cush. 346 ; 2 Parsons Maratime Law, 40 ; *People* v. *Resolute Ins. Co.* 17 Wis. 378 ; *State Mutual Fire Ins. Co.* v. *Roberts*, 31 Penn. 438.

This last case, going into a very thorough and full review of all the decisions, and deciding that the case in 1 Seld. was not good law, and wherever a different doctrine prevails, it will be found to be based upon the case in 1 Seld., a case which has been overruled by the courts in the same State in which it was decided, and which has been overruled wherever fully considered, upon authority or principle.

We take it, keeping in view that both the mortgagor and mortgagee have separate interests, which can be insured, each separate and distinct, each governed and regulated by its own terms and contracts, that in this suit it was the interest of the mortgagor that was insured and assigned, there will be no difficulty in arriving at a conclusion based upon principle and authority, that the court below decided erroneously. Fix's interest was assured, and then assigned as collateral security to Mayer; the appellant only entered into an executory contract with Mayer, by which they agreed to pay him the money they otherwise would have paid Fix, if Fix complied with the terms of his policy; they entered into no warranty or indemnification to pay Mayer at any events, at all hazards; no such construction can be legitimately put upon the contract, no more than when a leasehold interest is mortgaged by the lessee, could it be contended that the mortgagee had the right to the enjoyment of the leasehold interest without paying any rent to the lessor, if the lessee failed to do so, or that the mortgagee could not be deprived of his rights in the same by any action of the lessee in not complying with the terms of his lease. If the view of the law we take is not correct, then a person could insure his dwelling to-day, mortgage it and assign the policy to the mortgagee, and to-morrow open a store in it, keeping gun-powder, or any inflammable or combustible materials which would cause its destruction by fire; or make a match-factory of it, or burn it down, either secretly or openly, and yet the company would have no defense. It would be giving a person the right to do indirectly what he could not do directly, to take advantage and reap the benefit of his own wrong, a principle unknown to the law; then in order to get rid of an unsalable house, all it would be necessary to do would be to insure it as high as possible, mortgage it, assign the policy, and burn it down. A doctrine leading to such results, is too monstrous, too fraught with evil, to be ever recognized as good law.

Messrs. DAVIS & GILLESPIE, for the appellee.

The nominal plaintiff has no power to defeat the claims of the party in interest, and the defendants, knowing of and assenting to the assignment, are so far parties to the same, that they cannot take advantage of any subsequent acts of the assignor. *P. Ward* v. *Somerset Mutual Fire Insurance Company*, 42 Maine, 221.

The assignment of a policy of insurance with the consent of the insurers, creates new and mutual relations and rights between the assignee and the insurer, which, on the plainest principles of law and justice, cannot be changed or impaired by the acts of a third person, over whom the injured party has no control. *Tillon, and others* v. *The Kingston Mutual Ins. Co.* 1 Seld. 405 ; 7 Barbour, 570.

In the case of *Allen* v. *Hudson River Marine and Fire Ins. Co.* 19 Barbour, 445, Judge Harris says : " It is insisted by the defendants, that the insurance in the Columbia Insurance Company, and the omission to give notice of such insurance till after the fire, discharged them from further obligations upon the policy. I am inclined to think this objection would have been well founded, had the policy remained in the hands of the party originally insured; but it having been assigned to the plaintiffs before the last insurance was effected, and that, too, with the knowledge and assent of defendants, it was no longer in the power of the assignors to do anything to impair the policy in the hands of their assignees."

The same principle is affirmed in the case of the *Trader's Insurance Company* v. *Robert*, 9 Wendell, 404 ; and in the case of the *Charleston Ins. Co.* v. *Rose*, 2 McMullen, 237 ; and in the case of *Foster and others* v. *Equitable Mutual Fire Ins. Co.* 2 Gray, 216.

The same principle is also recognized and approved by this court in the cases of *New England Fire and Marine Ins. Co.* v. *Wetmore and others*, 32 Ill. 242, and *City Fire Ins. Co. of Hartford* v. *Marks*, 45 Ill. 484.

It is, however, contended by the appellants, that the principles above laid down have their origin in the cases above cited, of *Tillon and others* v. *The Kingston Mutual Ins. Co.* and the *Traders Ins. Co.* v. *Robert*, both of which cases have since been overruled by the court of appeals of the State of New York. It may be remarked, that three out of the eight judges in the court of appeals, dissented from these overruling opinions, and adhered to the former decisions, and the decisions of this court in the cases above cited, in 32d and 45th Illinois, were made several years after the decisions were made by the court of appeals of the State of New York overruling the former decisions, and may be presumed to have been made with full knowledge of those decisions.

In the cases cited by appellants' counsel from the Massachusetts reports, this question did not arise. In those cases there had been no written assignment of the policies, but only a direction that in case of loss the money should be paid to a third person, or the policies were taken out by the mortgagees upon their own interest in the property. We think the principle that an assignor of a policy, where it is assigned with the approval of the insurer, cannot do anything to avoid the policy in the hands of his assignee, is founded in good sense and justice. The object of the mortgagee, in this case, in procuring an assignment of the policy, was to secure his interest as mortgagee in case of a loss, and, as it is expressed in the assignment, when the assignment was approved by the appellants, it became, as it was intended to be, to all intents and purposes, a policy on the mortgagee's interest; and to hold that the policy might be avoided by any act of the assignor, would be "to keep the word of promise to the ear, and break it to the hope." Nor can it be justly contended that this construction will operate injuriously to insurance companies, as they can always protect themselves by limiting the extent of their approval of the assignment, or refuse it altogether.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The appellee, Fix, being indebted to Mayer, for whose use this suit is brought, executed to him his notes, secured by mortgage on a brewery, and at the same time assigned to him a policy of insurance, issued by the appellants, upon the building and fixtures. This assignment was made with the consent of the company endorsed upon the policy. The present suit was brought in the name of Fix for the use of Mayer, and resulted in a verdict and judgment for the plaintiff, from which the company appealed.

On the trial, the company offered to prove that the building was set on fire by the plaintiff, Fix. The evidence was objected to by plaintiff's counsel, and the objection was sustained. This ruling presents the main question in the case, to wit, whether, where a policy of insurance has been assigned by the assured to one holding a mortgage on the premises, with the consent of the company endorsed upon the policy, its validity can be destroyed by acts done by the assignor in violation of its conditions.

This question has received much discussion in the courts of New York, and the decisions first made have been deliberately overruled. It was first held, in the *Trader's Ins. Co.* v. *Robert*, 9 Wend. 404, that no act of the assured, after the assignment of the policy with the consent of the company, can impair the rights of his assignee. This case was approved and followed in *Tillon* v. *The Kingston Mutual Ins. Co.* 1 Seld. 406, the court holding that the assignment of a policy, with the assent of the insurer, creates new and mutual relations and rights between the assignee and the insurer, which can not be impaired by a third person, over whom the assignee has no control. The question again came up in *Grosvenor* v. *The Atlantic Fire Ins. Co.* 17 N. Y. 392, and in the *Buffalo Steam Engine Works* v. *The Sun Mutual Ins. Co.* ib. 401. In the first case, the policy was not assigned by the mortgagor to the mortgagee, but, by its original terms, the loss, in case

of fire, was made payable to the mortgagee. The majority of the court held the case was not distinguishable from an assignment of the policy, and overruling the cases already cited, held the policy was avoided by certain acts done by the mortgagor in violation of its terms. One of the eight judges composing the court, dissented altogether, and two others concurred only on the ground that the case was not like one in which the policy had been assigned. In the other case, decided at the same term, and which was one of assignment, the majority of the court held the policy avoided by the acts of the assignor, the three judges dissenting.

In these two cases, the question involved received a much fuller discussion than was given to it when the former decisions were rendered. In reply to the argument of the court in 9 Wend. that the assignor could not be permitted to execute a release to the insurance company which would impair the rights of the assignee, and that he should not be permitted to do indirectly what he could not do directly, the court very justly say, this argument fails to distinguish between acts done for the purpose of discharging a liability, and acts which, by the terms of the contract, were necessary to be done or omitted, in order to continue the liability in force. The principle, however, laid down in the case in 4 Selden, that the assignment of a policy, with the assent of the company, creates new relations and rights between the assignee and the company, is not wholly repudiated as never applicable, for it is admitted that, in cases where there has been an absolute sale of the insured property, the assured retaining no interest in it, and there has been an assignment of the policy to the purchaser, with the consent of the company, such purchaser may be considered as becoming a party to the contract, taking upon himself the performance of its conditions, while the assignor, ceasing to be a substantial party, and having no interest in the subject matter, could do no act affecting the rights of the assignee. The court insist, however, that this principle can not be applied to an assignment to a mortgagee, because,

in such cases, the mortgagor retains his interest in the property and in the policy, and whenever the mortgage debt is paid, the benefit of the policy reverts to him, or in case the policy exceeds the amount of the mortgage, the surplus, in the event of a loss, would be payable to the mortgagor. The court further say, that the rule of the former cases would make insurance companies liable for risks which they never assumed, and against which their policies are intended to guard them, for, under this rule, a mortgagor, remaining in possession, might convert a building, insured as a dwelling house, to a use vastly more hazardous, as by making it a place for manufacturing fire works, and still the company be required to pay, although one of the material terms of its contract was that its liability should cease in the event of such a change in the uses of the property.

The supreme court of Pennsylvania, in *State Mutual Ins. Co.* v. *Roberts*, 31 Penn. 438, adopts the rule of these cases, in a well considered opinion.

The supreme court of the United States in *Carpenter* v. *Providence Washington Ins. Co.* 16 Peters, 495, lays down a similar principle.

This rule is also followed in *People* v. *Resolute Ins. Co.* 17 Wis. 378.

On the other hand, the earlier New York cases were followed in *Pollard* v. *Somerset Mutual Fire Insurance Co.* 42 Maine, 226.

In this State the question is an open one. Counsel for appellee cite the *N. E. Fire and Marine Ins. Co.* v. *Wetmore*, 32 Ill. 242, and *City Fire Ins. Co.* v. *Marks*, 45 Ill. 482, as adopting the rule of the earlier New York cases. But in the first of these cases, the policy was issued directly to the mortgagees, and assigned by them with the note and mortgage, and the question, in regard to which the case in 1 Selden was cited, was as to the right of the assignee to bring suit in the name of the assignors. In the case in 45 Ill. the assured had sold the stock of goods insured, and the policy had been assigned

to the purchaser with the consent of the company. The court, in its opinion, cites the earlier New York cases only, but even under the rule laid down in the last case, in 17 N. Y., the assignee was entitled to recover, the transaction being a sale and not a mortgage.

This court has shown, in various cases, a disposition to hold insurance companies to a full measure of responsibility, but we are of opinion that the cases in 17 N. Y. stand upon the better reason.

The consent of insurance companies to an assignment of the policy by a mortgagor to a mortgagee, should not be construed as imposing upon them, as a consequence of such mere naked assent, a liability which they never would intentionally assume, and against which they take all possible pains to guard themselves, and must guard themselves in order to preserve their solvency. The principle contended for by counsel for appellee, and laid down in the earlier New York cases is, that no act of the assignor, done without the consent of the assignee, can invalidate the policy, so far as relates to the assignee. If this be true without limitation, then, as said by the New York court of appeals, a risk taken by a company at the lowest rates, because in the least hazardous class, might be changed, by the mortgagor remaining in possession, and without the concurrence of the mortgagee, to the class of extra-hazardous, and the liability of the company would remain the same. A detached dwelling house might be converted into a powder magazine, or to some other use which would prevent any sound insurance company from taking the risk on any terms, and still, under the rule claimed by appellee, the company would remain responsible. The mortgagor might go further, and not only convert his building to extra hazardous uses, but absolutely set it on fire, with a view of defrauding the company, as the appellants, offered to prove was done in the present case.

We can not adopt a rule which would lead to such results. In analogy to the case of absolute sales by the assured, we

should be much inclined to hold to the rule announced in 1 Selden, if it were possible to separate the interest of the mortgagor and mortgagee. But it is not, for the mortgagor is not only interested in the payment of the mortgage, but, where he pays the premium, the fruits of the policy absolutely belong to him, subject to the lien of the mortgagee. Where there is an absolute sale, there is no difficulty in determining the measure of the assignee's rights and the company's liabilities, for he stands in the position of receiving a new policy as owner, and becomes responsible for any extra-hazardous uses to which the building may be applied, a responsibility he can not evade on the ground that the building is not under his control. But where there is no sale, but the policy is merely assigned as security, we are obliged to hold, either that the company is bound absolutely to the assignee, no matter how far the conditions of its contract may have been violated, which would be a very unreasonable ruling, or that there is such identity of interest in regard to both the property and the policy, that there can be no recovery, even for the use of the assignee, if the assignor fails to comply with the conditions.

The utmost that can be claimed for an assignee in such cases is, that he should stand in the same position as if he had taken out a new and independent policy to protect his own interest as mortgagee. But admitting such claim, we have no rule to guide us. It is impossible for us to say what conditions the company would deem it necessary to insert in such a policy for its own protection. It is very certain it would stipulate that the hazard to the building should not be increased, and thus would compel the mortgagee to take upon himself the responsibility of the mortgagor's acts, from which he could not escape by saying that his rights should not be prejudiced by the acts of a third person. It would necessarily result, from the nature of the interest insured, that its owner might be damnified by the acts of the mortgagor in possession, although beyond his control. Whether a company would also stipulate, in such a policy, that neither the mortgagor nor the

11—53RD ILL.

mortgagee should obtain further insurance, without its consent, we do not know, though it is evident such a stipulation would be a wise precaution.

The history of the Robert case in 9 Wend. singularly illustrates the injustice of attempting to base a judgment against an insurance company, in favor of the mortgagor, upon the equities of his assignee. In that case, the judgment was rendered in favor of Robert, the mortgagor, for the use of Bolton, his assignee, on the ground that, though Robert had violated the policy, this could not prejudice Bolton. After the rendition of the judgment, and before its payment, Robert paid off the mortgage, and threatened the insurance company with an execution. 'The company moved the court for a perpetual stay, which was granted, the court holding, consistently with its former ruling, that Robert had no equitable rights under the policy. 9 Wend. 404 and 474. From this order an appeal was taken to the court for the correction of errors, and that court held, as the original judgment was unreversed, it was conclusive upon the rights of the parties, and as the mortgage had been paid, the benefit of the judgment reverted to Robert, the mortgagor. He thus received the full benefit of the policy, although he had forfeited all rights under it, and a judgment had been rendered in his favor only in consequence of the equities of his assignee. 17 Wend. 631.

It is, in our opinion, very clear, if we attempt to dispose of cases of this character on the theory that the assignment is to be treated as a new policy, issued directly to the mortgagee, for his exclusive benefit, and to adjust the rights of these parties in accordance with what we may suppose such a policy would contain, we shall be wandering in a labyrinth where there would be but one thing certain, and that is, that great injustice would be done these companies. We should practically be enforcing liabilities against them which they never intended to incur, and giving to the mortgagor the benefit of a policy in which he has forfeited all his rights.

We deem it safer and more just to say, that where a policy is assigned as collateral to a mortgage, though with the consent of the company, the assignee takes it subject to the conditions expressed upon its face, or necessarily inhering in it, and that no recovery can be had merely in consequence of the equities of the assignee, if the assignor has lost the right to recover by violating the terms of the contract.

The evidence, offered to show that the plaintiff set the building on fire, should have been admitted, and the instruction asked for defendants, in regard to the effect of a second insurance, should have been given.

*Judgment reversed.*