Dissenting Opinion.
Watkins, J.
Executory proceedings were commenced against Mrs. E. A. St. Mare, a married woman, to foreclose a conventional mortgage on her paraphernal property, under her administration, which she had consented to on the 6th of August, 1884, as a security to the plaintiff for the loan of money — she being judicially separate in property from her husband, and the judge of the proper jurisdiction having authorized her to borrow the money.
The maker and mortgagor appeared and enjoined the seizure and sale of her property on the ground that the note and the debt it evidenced had become extinguished by the prescription of five years, and the prayer of her petition, duly sworn to, is that proceedings be perpetually restrained and the note and mortgage be cancelled and annulled.
In answer, the plaintiff, in executory proceedings, alleges that the mortgagor is indebted to him as stated in his petition, and his prayer is that her demand be rejected.
The only question we have to consider is that of prescription.
It is true that there are endorsements on the back of the note which indicate the annual extension of time for the payment of the note; but these are neither signed by the defendant, nor were they authorized by her, and do not, consequently, have the effect of interrupting the current of prescription.
The creditor, however, relies upon the mortgagor’s assignment to him of an insurance policy, covering the buildings on the mortgageed premises, as having effect as a pledge to interrupt prescription.
The policy bears date June 16, 1880, and the amount of insurance is 87000. By successive renewals this policy was kept and continued in force up to and including the 17th of June, 1885.
The loan was effected and the note and mortgage were executed on the 6th of August, 1884, and in the act of mortgage is found the following stipulation, viz.:
“ And the said mortgagor * * * further declares that she does, by these presents, bind and obligate herself and her heirs to cause all and singular the buildings and improvements on the prop - erty aforedescribed, to be insured and kept insured against the risk *1160 of fire, up to their full value, until the full and final payment of said aforesaid promissory note, and to transfer and deliver unto the said mortgagee the policy of insurance,” etc.
In keeping with that stipulation, the mortgagor placed upon the insurance policy the following endorsement, viz.;
New Orleans, La., August 6, 1884.”
“For value received I hereby transfer, assign and set over, all my rights, title and interest in and to the within policy of insurance unto and in favor of Jean Marie Begue, as his interest may appear.
“(Signed) E. A. Ferrandou.
“ To authorize my wife. A. Ferrandou.”
Subsequently, this policy was annually renewed until the 19th of June, 1898, when it was surrendered, and a new one was issued in favor of the defendant and mortgagor.
In this policy is found the recital, viz.: “ Loss, if any, payable to Jean Marie Begue, as (his) interest may appear.”
The foregoing is all the evidence which the record affords in reference to the alleged pledge of the policy of insurance to the plaintiff, mortgagee and payee of the note in suit.
In my opinion, it fails to establish the relations of pledgor and pledgee.
The whole question turns upon the act of mortgage, a stipulation of which obligated the mortgagor to keep the buildings and improvements on the property mortgaged insured up to their full value against loss or damage by fire, until the full and final payment of the mortgage note, and to transfer and deliver unto the mortgagee the policy of insurance.
The evident object and scope of that stipulation was to oblige the mortgagor to keep up the mortgaged property to its then standard of value as a security for the debt; so, that in ease of loss or damage by fire, before the maturity of the note, and its payment, or the foreclosure of the mortgage, the insurance policy would fully guarantee the mortgagee’s reimbursement to that extent.
It is equally manifest, that, in the event no loss or damage should occur by fire, prior to payment of the note, the insurance policy gave no additional value to the property as a security for the mortgage indebtedness.
The assignment is contemporaneous in date with the execution of *1161 the note and mortgage, and constitutes a component part of the same transaction. The covenant in the act of mortgage is, that the maker and mortgagor should transfer and deliver to the mortgagee the policy of insurance; and the language of the assignment is, “ for value received I hereby transfer, assign and set over all my rights, title and interest in and to the within policy of insurance,” etc.
This is the phraseology of an act of sale, and not that of & pledge. It evidences an intention on the part of the mortgagor, to simply carry into effect the covenant of the act of mortgage, to transfer and assign to the mortgagee the insurable value of the buildings on the mortgaged property, so as to put it in his power to save himself, in case of loss or damage thereto by fire, during such a period of time as the note should remain unpaid. Such is the clear import of the words of the assignment, viz.:
“ In favor of Jean Marie Begue, as his interest may appear.”
And it is likewise the clear import of the condition of the renewal policy, viz.:
“ Loss, if any, payable to Jean Marie Begue, as interest may appear."
In the argument of the counsel for the creditor some stress is placed upon this last stipulation, and he points to it as complete evidence of the debtor’s acknowledgement of the creditor’s right, which interrupts prescription. But the testimony fails to satisfactotorily show that the debtor, a married woman, ever authorized its insertion in the policy; or that she was authorized to do so, either by her husband or the judge. The burden of proof is on the one seeking to hold a married woman bound upon a contract, to show by proof that her act was authorized, and that it enured to her benefit, and the evidence in the record falls short of this, in respect to the stipulation quoted from the renewal policy.
The only evidence in the record on this quotation is that of the officer of the insurance company, whose statement is, that it is a renewal of the policy of Mrs. Ferrandou, the defendant. That on coming in from lunch, he found the renewal on his desk and made out the policy accordingly. That the defendant was not present in the office at the time. That upon one occasion he saw Mr. and Mrs. Ferrandou at the office, but he did not know what transpired, as they spoke with the secretary.
The defendant, as a witness, states that she went to get another *1162 policy of insurance, because she wanted one for more money and to pay a smaller premium. That the officers of the company told her they would send it to her, but they never did.
! This is all the evidence on the subject, and instead of it making proof of her knowledge or concurrence in the recitals of the renewal policy, it exhibits her utter ignorance of them. That she was neither consulted nor advised in regard to its confection.
It is therefore but reasonable to infer from the evidence that the officer of the insurance company, who caused same to be drawn, simply gave directions that the policy in renewal of the insurance should follow the phraseologv of the policy which was surrendered to the company.
Hence it possesses just the same significance as the original policy and no more.
To have effect as a pledge, the thing given to the creditor must be given as a security for his debt. R. C. C. 3133.
And it has often been held by this court, that “ no prescription runs as long as there is property pledged for the payment of the debt} such pledge being a standing acknowledgment of the debt.” Vide Wilson vs. Bannen, 1 R. 556.
It was held in Montgomery vs. Levistones, 8 R. 145, that “the creditor’s possession of the debtor’s property with the latter’s consent, to pay himself out of the rents, is an acknowldgment of the debt interrupting prescription.”
To the same effect is Scovell vs. Gill, 30 An. 1207. The theory entertained by the court was that “ it prevented prescription from running in the same manner as in case of pledge, (and) prescription does not run so long as the thing pledged remains in the hands of the pledgee.” Ibid.
And in Wilson vs. Bannen it was said that “ as long as the 105 kegs of nails remained in the hands of the owners of the ship as a pledge for the payment of the freight no prescription could run, because the pledge was a standing acknowledgement of indebtedness •on the part of the defendant.”
In Citizens Bank vs. Hyams, 42 An. 729, we said:
“ The possession of the pledge was a constant recognition of the debt, which prevented prescription from ever beginning to run. It is not the contract, nor the act of pledge, that interrupts prescription; but it is the detention of the thing pledged. Such possession is a con *1163 stant renunciation of prescription every instant that it begins to run.” See, also, Conger vs. New Orleans, 32 An. 1253; Latiolais vs. Citizens Bank, 33 An. 1452; Lackey vs. Macmurdo, 9 An. 18; Citizens Bank vs. Knapp, 22 An. 117; Citizens Bank vs. Johnson & Bogan, 21 An. 128; Police Jury of West Baton Rouge vs. Duralde, 22 An. 107; Blanc vs. Hertzog, 23 An. 199.
From all of thesé decisions we find the essential thing to be a pledge of something by the debtor to his creditor as a security for his debt, and it is the creditor’s possession oí the thing that is thus pledged that is regarded as the standing acknowledgment of the debt, which interrupts and keeps suspended the current of prescription.
While it is true that, as in the case of a Citizens Bank mortgage, the pledge of certificates of stock delivered to the bank, at the inception of the contract, is a pledge which interrupts prescription of the mortgage indebtedness, they are given that effect because they possess in themselves an additional value entirely independent of the security of the mortgage. But it does not follow that the assignment of an insurance policy on the mortgaged premises is such an additional security for the debt, though it be contemporaneously assigned to the mortgagee, and therefore it can not be given effect as a pledge. Indeed, if such an assignment of a policy of insurance (as the interest of the mortgagee may appear in case of loss), is a pledge which suspends the prescription of the mortgage indebtedness, then mortgage notes become practically imprescriptible.
This surely is not the case.
But the assignment of an insurance policy to a mortgagee is, in no sense, a pledge for the security of the debt. Nor is it a contract with the mortgagee only. It is simply intended as a protection of the security of mortgage, and not for the payment of the debt. This principle was maintained in Illinois Insurance Company vs. Fix, 53 Ill. 151, in which the court say:
“ The interest that can be claimed for an assign in such case is that he should stand in the same position as if he had taken out a new and independent policy to protect his own interest as mortgagee.”
The same distinction was taken in Gordon vs. Savings Bank, 115 Mass. 590, the court holding that the insurance policy was for the protection of the security, and not for the payment of the debt. It was *1164 collateral to the debt. Money received from the insurance company took the place of the property destroyed.
In that case the court further held, that in case of loss the money could not be applied to the payment of the 'debt secured by the mortgage before it became due without the consent of the mortgagor; and it is equally true that if the note should go to maturity before a loss by fire should occur, the mortgaged property could be seized and sold without any reference to the policy of insurance, the benefit of which would, of course, inure to the adjudicatee without any stipulation to that effect, the mortgagee’s beneficial interest therein being extinguished by the sale' of the mortgaged property.
Such is not the case of a pledge of additional property, as .that of shares of stock of the Citizens’ Bank, as a further security for the debt which is also secured by mortgage. Succession of Thompson, 46 An. 1075.
If the mortgage were permitted to perempt by a failure to rein-scribe it within ten years, it would lose its grasp upon the property, and no longer be available as security to the creditor; and he would, at the same time, lose interest in the policy of insurance.
It has been repeatedly held, in other jurisdictions, that in case the insurance company should exercise the option of its contract and elect to rebuild, or repair the burned buildings, the policy ceases to be a contract of insurance and becomes a building contract between the insurer and the insured, with which a mortgagee has no interest or concern. Henneman vs. Insurance Co., 75 N. Y. 10; Morrill vs. Insurance Co., 33 N. Y. 429; Beals vs. Home Insurance Co., 36 N. Y. 522.
The enunciation of this principle clearly shows that an insurance policy is not, in any sense, a pledge, because it may, after a loss by fire has occurred, be changed to a building contract, at the option of the insured and insurer, without the knowledge or consent of the mortgagee.
In my opinion, there is no hypothesis on which an insurance policy can be held to be a pledge in favor of a mortgagee to secure the payment of his debt.
But independently of that proposition, claim is made on behalf of the mortgagee that prescription of the debt was interrupted by the annua] payment of premiums, thus keeping and maintaining the policy in force, such annual payments being acknowledgments of the *1165 mortgage debt. Or, in other words, the payments of premiums was a constant admission of the existence of the debt.
But is that so?
It would seem but reasonable that the premiums should follow the conditions of the contract, and each payment of premiums evidences a new contract of insurance just like the original. Premium is the aliment on which insurance subsists, and it necessarily sustains like relation to the debts as the policy does. Hence, the payment of annual premiums carries no other significance than does the payment of the first one which is acknowledged in the face of the policy. Therefore, if I am right in holding that the assignment of an insurance policy has not the effect of a pledge interrupting prescription, for the same reason payments of annual premiums do not amount to an acknowledgment of the debt which interrupts prescription.
But the contract of insurance and the payment of premiums annually only evidenced relations between insurer and insured, and to which the mortgage creditor was neither party nor privy, the payments having been made to the insurance company, and not to the creditor, if made by the debtor at all.
Thus far, however, the argument has proceeded on the assumption that the defendant mortgagor made those payments in propria persona.
It must be borne in mind that the mortgagor is a married woman, judicially separate in property from her husband. That she executed the note and mortgage with the authorization of the judge of competent jurisdiction. But the evidence shows that the money borrowed was paid into the hands of the husband, and that he appeared annually at the bank where the note was deposited, in company with the mortgagee, and obtained extension of payment annually, and, in evidence thereof, the husband and mortgagee placed their signatures on the reverse of the note.
The evidence also shows that the defendant mortgagor never signed or acknowledged said extensions, and that in so doing her husband did not act as her agent. The note clerk of the bank being interrogated on the question said that he regarded the husband asan honorable man, and relied upon his action as being duly authorized, and when he inquired into the matter, he learned it was too late, the note having become prescribed.
*1166 The defendant mortgagor testifies as a. witness that the acts of the husband, in this respect, were not authorized by her, and that in so doing he was not her agent.
Hence, the reasonable inference is that the husband used his own money in paying what is termed “ small interest,” in order to obtain annual extensions of time for the payment of the principal of the note.
This much seems to be conceded on the other side, inasmuch as it is not insisted in the argument that either the endorsements on the notes or the the payment of “ small interest” operates an interruption of prescription.
With regard to the payment of the annual premiums, there is no statement of any kind in the evidence, except that of one official of the insurance company, who said, in a general way, that all insurance premiums had “ been all paid more or less regularly,” without specifying by whom the premiums had been paid.
But, inasmuch as the husband received into his own hands the money which was loaned on the mortgage, and annually procured extensions of the note, with the consent of the mortgagee, on the payment of small interest, is it not reasonable that a like provision was made by and between them for the payment of the premiums on the policy which the mortgagee held in possession?
In this connection there is one statement made by the official of the insurance_company which is quite significant. It is exhibited by the following interrogation, viz.:
Q,. You attended to the making of the policy?
A. Yes.
Q. Was that renewal by Mrs. E. A. Eerrandou?
A. It was a renewal of her policy, etc.
The testimony further shows that the defendant was not present at the time, and knew nothing of its preparation. It also shows that" the renewal policy was never sent to her at all, and that, in point of fact, she never saw it.
On the foregoing it can safely be affirmed that there is no proof in the record of the defendant having paid the insurance premiums, and that, consequently, their payment did not operate as an interruption of the prescription of the note.
As the sole question in this case is prescription vel non, can it be supposed that payments of the premiums by the wife would have *1167 been left to inference, or suffered to remain in doubt, if positive proof of the fact could have been made?
And, if in fact she had made the payments herself, or by her authorization, would it not have been quite an easy matter for the insurance company to have supplied the proof? Undoubtedly.
The Oode provides that “ prescription ceases to run whenever the debtor * * * makes acknowledgment of the right of the person whose title they prescribe.” R. O. O. 8520.
Can it be correctly said that the defendant, a married woman, has “ acknowledged the right” of the creditor, in view of the proof that is afforded by this record? Certainly not.
In such case the debtor’s acknowledgment must be clearly shown; and in Lackey vs. Macmurdo, 9 An. 18, it was said that “an interruption of a prescription gives a new date to prescription; and as it affects the rights and obligations of the parties, the debtor’s assent to such a charge must be clearly shown.” It is evident that the judgment appealed from is erroneous and ought to be reversed.