PLANTERS' MUTUAL INSURANCE ASSOCIATION *v.* SOUTHERN SAVINGS FUND & LOAN COMPANY.

Opinion delivered March 24, 1900.

1. INSURANCE—ACTION ON POLICY—MATURITY.—An action on a policy of fire insurance payable to a mortgagee, to the extent of his interest, may, after a loss, be brought before the mortgage debt is due, where the policy is payable within ninety days after notice and proof of loss, and provides that no action thereon shall be sustained unless commenced within six months after the loss. (Page 17.)

2. SAME—WAIVER OF CONDITION.—Stipulations in a policy of fire insurance, held as collateral security to a mortgage, that "assured shall not be entitled to demand or recover any part of the amount insured until he, she, or they shall have enforced and collected such portion of the debt as can be collected out of the primary security," and that, if the insurer shall claim that as to the mortgagor no liability for the loss exists, the insurer may pay the mortgage debt and take an assignment of the mortgage, are waived if the insurer denies liability to either the mortgagor or mortgagee. (Page 18.)

3. ASSIGNMENT OF POLICY—CONSIDERATION.—An agreement between the insurer and the assignee of a policy of fire insurance, which holds a mortgage on the property insured, that, as to the latter's interest, the policy "shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured" is based upon a good consideration, where the assignee agreed to pay for all increased risks, and to give notice of any change of ownership and increase of hazard which should come to its knowledge. (Page 19.)

4. USURY—WHEN NO DEFENSE.—It is no defense to an action on a policy of fire insurance that the policy was assigned as collateral security for a usurious mortgage debt. (Page 21.)

Appeal from Clay Circuit Court, Western District.

FELIX G. TAYLOR, Judge.

*J. W. House* for appellant:

The court erred in refusing to instruct the jury that the action by appellee company could not be maintained if the debt to it was not due at the commencement of the suit. 17 Ark. 442; 21 Ark. 186; 21 Ark. 499; 42 Ark. 163. No subsequent act or occurrence will cure the defect, if the suit is prematurely brought. 22 Ark. 572; 14 Ark. 427; 42 Ark. 163. The question as to whether a suit is prematurely brought may be raised either by demurrer or on trial, under the general issue. 21 Ark. 186. The clause in the policy, providing that it shall be void upon failure to pay the note for which it was issued, conveyed notice to appellee of the existence of said note and of the requirement that it be paid; and the failure to pay this note is not such an *"act or neglect of the mortgagor"* as is contemplated in that clause of the policy which provides that *"this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, etc."*

It was the duty of the appellee to see that this note was paid, and the failure to pay it rendered the policy void for want of consideration. 47 Am. St. Rep. 147; 4 Joyce, Ins. § 3304; 87 N. Y. 67; 99 N. Y. 37; 17 Pa. St. 253; 68 Ia. 578; 135 Mass. 251, 34 S. W. 460; 35 S. W. 300; 49 S. W. 1032; 34 S. W. 333. The court erred in sustaining the motion to strike out appellant's plea of usury. The indorsement on the policy was only a contingent assignment of what, if anything, might become due under the contract. 2 May, Ins. p. 1021, § 425; 49 N. W. 1033. Appellant merely became a surety or guarantor to pay, in the event of loss, whatever Nance might legally owe and hence it can plead usury in the transaction alleged to have given rise to the debt from him. 32 Ark. 362; 27 Am. & Eng. Enc. Law, 950; 44 N. H. 227; 27 Neb. 401; 13 Ind. 457; 39 Ind. 107; 22 Ala. 262; 9 Paige, 197; 46 S. W. 67.

*Samuel H. West* and *J. C. Hawthorne*, for appellee.

The appellant having denied its liability solely upon the ground that the premium note was unpaid, it waived the defenses that the suit was premature, or that appellee had failed to exhaust the primary security. 53 Ark. 494; 63 N. W. 860; 65 N. W. 236; 35 Atl. 75; 51 N. W. 987; 61 N. W. 740; 49 N. W. 217. The appellant, having assumed the payment of the debt of Nance, can not plead usury. 32 Ark. 347; 62 N. W. 857. The failure of Nance to pay the note at maturity was only a neglect or an act of his, which could in no way defeat appellee, under the provisions of the policy. 73 N. Y. 141; 55 N. Y. 343; 99 N. Y. 36.

BATTLE, J.   B. F. Nance and the Southern Savings Fund & Loan Company instituted an action against the Planters' Mutual Insurance Association upon an insurance policy executed by the defendant to Nance on the 15th day of April, 1896, in which it insured a certain dwelling house of Nance for $1,500 against fire for the term of three years. They alleged in their complaint that Nance, on the 9th of June, 1896, executed to Charles B. Stark, trustee for the Southern Savings Fund & Loan Company, a mortgage on the property upon which the dwelling house was located; that the defendant, on the 2d day

of May, 1896, entered into a contract with the Southern Savings Fund & Loan Company to the effect that, in case any loss should occur under the contract for insurance, the defendant would pay to it, as mortgagee or beneficiary, as its interest might appear; that Nance was indebted to the loan company in the sum of $975; that the dwelling house was destroyed by fire on the 28th of January, 1897; that Nance forthwith gave notice of the loss, and would have proved the same, had the plaintiffs not been prevented by the written refusal of the defendant to pay either of them.

To this complaint the defendant filed an answer, the substance of which we give in the language of the abstract of the appellant, as follows:    "It admitted the contract of insurance with Nance, but it denied the execution of said mortgage to the appellee, the Southern Savings Fund & Loan Company, and alleged that the said Nance executed a mortgage on the 9th day of June, 1896, to Chas. B. Stark, of the city of St. Louis,' as trustee.    It admits it entered into a contract with the appellee, the Southern Savings Fund & Loan Company, to the effect that, in case any loss should accrue under said contract of insurance, it should pay the said appellee as its interest might appear.    The defendant denies that the sum of $975 is due from the said Nance to the said appellee, and it says that, if the said Nance was indebted to the said company in any sum whatever by virtue of said mortgage, it was not due and payable at the time of the commencement of this suit, nor was it due and payable at the time of the filing of said complaint, and it says that the said appellee could not recover in said cause:    First. Because the said debt from said Nance to said appellee, if any, was not due and payable.    Second.    Because it expressly stipulated in said contract of insurance No. 1340 "that there was a premium note for $73.75 due December 1, 1896, which said note at the time of said alleged fire and loss was past due and unpaid, and under the terms of said policy this contract was thereby rendered null and void."    Third.    Because it expressly provided in said insurance contract "that, should any loss or damage accrue to the property insured in such case—that is, where a note, or any part thereof, remains past due and unpaid at the

time of said loss or damage,—then said contract shall be null and void, and if any loss accrue to the property insured, and said note for $73.75 was past due and unpaid at the date of such alleged loss, then said contract of insurance is null and void," and the plaintiff is not entitled to recover on the same; and it further states that the said appellee at the time of such alleged loss had knowledge of the fact that said note of $73.75 was due and unpaid long before the time of said alleged loss; that said insurance contract, by reason thereof, was null and void, and that no recovery could be had thereon. Fourth. The defendant also alleges that the plaintiff, the Southern Savings Fund & Loan Company, cannot maintain this action because said policy of insurance sued on was assigned to it merely as collateral security on the mortgage on said property and the real estate on which it was situated, and it was expressly provided in said insurance contract 'that, should any loss or damage accrue to said property insured, the mortgagee shall not be entitled to demand or recover any part of the amount until he, she, or they have enforced and collected such a portion of the debt as can be collected out of the primary security to which this contract is collateral,' and the defendant says that said Southern Savings Fund & Loan Company has not exhausted its security, and that the value of the real estate upon which it holds said mortgage is largely greater than the amount claimed by it under this contract, and is amply sufficient to protect said plaintiff, the Southern Savings Fund & Loan Company, against any loss by reason of said fire. Fifth. The defendant, further answering, states that the note and mortgage executed by B. F. Nance to the plaintiff, Southern Savings Fund & Loan Company, on the 9th day of June, 1896, and the mortgage executed by B. F. Nance to said Chas. B. Stark as trustee of the same date, and to secure said note, being the note and mortgage upon which the plaintiff sues on herein, are both usurious and void, and both said note and mortgage were executed in this state, and are Arkansas contracts, and are to be construed in accordance with the laws of this state; that in said note and mortgage the said B. F. Nance agrees to pay the said plaintiff,

the Southern Savings Fund & Loan Company, interest at the rate of $5 per month on $1,000, which amounts to 6 per cent. per annum, and he also agrees to pay on said note and mortgage a premium of $6 per month on the $1,000, which amounts to $7\frac{1}{2}$ per cent. per annum on said amount, thus making interest charged on said note and mortgage amount to $13\frac{1}{2}$ per cent. per annum; that the monthly payment of $6 as a premium mentioned in said note and mortgage is only an additional interest charged, and is a mere sham, device and subterfuge to cover up the charge of usury; that the said Southern Savings Fund & Loan Company unlawfully and corruptly demands, exacts and receives of and from the said Nance interest on $1,000 at the rate of $13\frac{1}{2}$ per cent. per annum, and is therefore usurious and void, and the said company is not entitled to recover thereon."

The plaintiffs filed a demurrer to so much of the answer as sets up usury, which was sustained by the court. After this they filed a supplemental complaint, in which they alleged that the loan company had collected $250 upon the mortgage by accepting a deed to the mortgaged premises at that price, and had thereby exhausted all security for the payment of the debt of Nance, except the policy sued on; and the defendant answered and denied these allegations.

A jury was impaneled to try the issues in the case; and the plaintiffs introduced and read as evidence the policy sued on, which contained the following clauses: "Planters' Mutual Association of Arkansas, * * * by this contract of insurance, in consideration of note for $73.75 due December 1, 1896, and the stipulations herein contained, do insure B. F. Nance against loss or damage by fire * * to the amount of fifteen hundred dollars as follows: On his dwelling house, $1,500, situate on lots Nos. 10, 11 and 12, block No. 401, Corning, county of Clay, Arkansas, * * * and the said association hereby agrees to make good unto the said assured, his executors, administrators and assigns, all such immediate loss or damage, not exceeding the amount of the sum insured, nor the interest of the insured in the property, nor to exceed three-fourths of the cash value of any building or other property, at

the time of loss, as shall happen by fire  *  *  to the prop-
erty above specified from the fifteenth day of April, 1896, at
12 o'clock noon, to the fifteenth day of April, 1899, at 12
o'clock noon, except such portions of the above-mentioned per-
iod of time as this association shall hold against the assured
any promissory note past due and unpaid, in whole or in part,
given by the assured for the assessment charged for this con-
tract or any part thereof, and during such portion of time this
contract shall be null and void, and so continue until such
promissory note is fully paid.  *  *  *  The amount of
loss or damage to be estimated according to the actual cash
value of the property at the time of the loss, and to
be paid in ninety days after notice and due and satisfactory
proof of the same shall have been made by the assured and re-
ceived at the association's principal office at Little Rock, Ark.,
in accordance with the terms and provisions of this contract
hereinafter named. ·  *  *  *  When a membership contract
is issued upon the interest of a mortgagee, or other creditors,
or is held as collateral security to a mortgage or any other
debt or demand, the assured shall not be entitled to demand or
recover any part of the amount insured until he, she, or they
shall have enforced and collected such portion of the debt as
can be collected out of the primary security to which this con-
tract is collateral.  *  *  *  It is mutually agreed that no
suit or action against this association upon this contract shall
be sustainable in any court of law or equity, unless commenced
within six months after the loss or damage shall occur. And
if any suit or action shall be commenced after the expiration
of said six months, the lapse of time shall be taken and
deemed as conclusive evidence against the validity of such
claim, any statute of limitation to the contrary notwithstand-
ing."

And they also read as evidence an indorsement upon the
policy as follows:

"Policy No. 1340, in the name of B. F. Nance. Loss if
any payable to the Southern Savings Fund & Loan Company
of St. Louis, Mo., mortgagee, or beneficiary or assigns as here-
inafter surviving. It is hereby agreed that this insurance, as

to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. It is further agreed that the mortgagee or trustee shall notify said company of any change of ownership or increase of hazard which shall come to his knowledge, and that every increase of hazard not permitted by the policy to the mortgagor or owner shall be paid for by the mortgagee or trustee, on reasonable demand, according to the established scale of rates for the use of such increase of hazard during the then current year. It is also agreed that whenever the company shall pay the mortgagee or trustee a sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability thereof exists, it shall at once be legally subrogated to all the rights of the mortgagee or trustee under all the securities held as collateral to the mortgage or trust debt to the extent of such payment, or at its option may pay to the mortgagee or trustee the whole principal due or to grow due on the mortgage or trust deed, with interest, and shall thereon receive a full assignment of the transfer of the mortgage or trust deed, and all other securities held as collateral to the mortgage or trust debt, but no such subrogation shall impair the right of the mortgagee or trustee to recover the full amount of his claim. The foregoing provisions and agreements shall take precedence over any provision or condition conflicting therewith and contained in said policy. This clause is attached to and made a part of said policy from the 2d day of May, 1896.

"In witness whereof the duly authorized agent of the said insurance company has hereunto set his hand of said day.

[Signed] "M. MILES, General Agent."

They read the bond of Nance to the loan company, and the mortgage executed to secure the same. The bond was in the sum of $1,000, and contained the following recital and covenant: "Whereas the said B. F. and Lettie J. Nance are the owners and holders of one share of the capital stock of said Southern Savings Fund & Loan Company; and whereas, at the

request of said B. F. and Lettie J. Nance, the said company had loaned the sum of one thousand dollars ($1,000) to said B. F. and Lettie J. Nance, * * * the said B. F. and Lettie J. Nance, in consideration of such loan, * * * do covenant and agree that they will henceforth well and truly pay to said company, its successors or assigns, on or before the 15th day of each month, the sum of fifty cents as a monthly installment on each one hundred (dollars) of stock above named, and also on the same day the sum of five ($5) dollars as monthly interest on said loan, and also the monthly sum of six ($6) dollars as premium on said loan; such payments to continue until each full share of said stock shall be worth on the books of said company the sum of one thousand dollars, according to the by-laws of said company; and that then the sum so expended and loaned as above set out by said company shall be repaid to it by the absolute surrender to and cancel⸳ lation by said company of said share of stock." The mortgage was executed to secure the performance of the covenants in the bond, and for that purpose conveyed to a trustee certain lots and the dwelling house thereon, which was insured by the defendant. It provided "that if at any time default should be made in the payment of dues, premium, interest, fines, or either of them, and the same shall remain unpaid for a space of six months after payment thereof shall fall due, or if the balance due by the obligors in said bond shall be allowed to accumulate until it equals the sum of six months' dues, interest and premium, then the whole principal debt shall, at the option of said company, or its successors, immediately become due and recoverable, and payment of said principal sum and all interest thereon, as well as the dues, premiums and fines then due, may be enforced and recovered at once by sale of the property described in the mortgage. The mortgage also provided that "B. F. Nance and wife will, during the continuance of the mortgage, keep the building insured in some responsible insurance company or companies in a sum satisfactory to said company, and keep the policy or policies issued thereon constantly assigned to the party of the third part, or to its successors or assigns, as its or their interest in that behalf

may appear, for further securing said loan; and any and all moneys which shall be collected under such policy or policies, less expense of collecting thereof, shall be applied towards payment of said principal debt mentioned in said bond, unless said improvements and buildings be replaced."

Evidence was adduced tending to prove the following facts: The dwelling house insured was totally destroyed by fire on the 29th of January, 1897. In due time the plaintiffs notified the defendant that the house was destroyed. It responded, and refused to pay anything as indemnity for the loss, because Nance failed to pay his note for the premium due for the insurance, and because the same was due and unpaid at the time of the loss. The house was reasonably worth the sum of $2,000. Nance, during the pendency of this action, conveyed the lots described in the mortgage to the loan company, and was credited on the debt secured by the mortgage with the sum of $250. This was the price agreed upon, and the credit for the same was the consideration of the deed, and was all the lots were reasonably worth. The amount of the indebtedness of Nance to the loan company, which was secured by the mortgage, and left unpaid after the credit for $250, was $908.70. There was no security for the payment of this sum, except the policy sued on. Nance paid the sums he agreed to pay monthly on the mortgage debt until December, 1896, or January, 1897, when he made the last monthly payment.

The court refused many requests of the defendant for instructions to the jury, and gave many directions over its objections.

The jury returned a verdict in favor of the loan company for $787.47, and found in favor of the defendant as to the right of Nance to recover; that is, Nance was not entitled to recover anything on the policy. Judgment was rendered in favor of the loan company for the $787.47, and the defendant appealed.

Appellant insists that the judgment against it should be reversed because this action was commenced before the debt of Nance to the loan company was due and payable. This debt was to be satisfied by monthly payments. The mortgage pro-

2

vided that, if default should be made in these payments and should continue for six months, the whole debt should become due. The last monthly payment was made in December, 1896, or January, 1897, about two or three months before the commencement of this action, which was instituted on the 27th of March, 1897. No default in the payment of the monthly dues occurred six months before that time. But this did not fix the time within which this action should be brought. The amount due on the policy on account of the loss by fire should have been paid, according to its terms, within ninety days after notice and due and satisfactory proof of the loss should have been made by the assured and received at appellant's office at Little Rock, Arkansas. It was mutually agreed by the parties to the policy that no action upon the contract of insurance should be sustainable in any court of law or equity unless commenced within six months after the loss or damage should occur. The policy fixed the time when the right of action accrued, and the time within which it should be commenced.

Appellant also insists that this action was prematurely instituted, because the policy sued on provides that "the assured shall not be entitled to demand or recover any part of the amount insured until he, she, or they shall have enforced or collected such portion of the debt as can be collected out of the primary security to which this contract is collateral," and that was not done in this case. That is true. But, in the indorsement made upon the policy at the time it was formally assigned to the loan company, it was agreed that whenever the appellant "shall pay the mortgagee or trustee a sum for loss under" the policy sued on, "and shall claim that, as to the mortgagor or owner, no liability therefor existed," it may "pay to the mortgagee or trustee the whole principal due or to grow due on the mortgage or trust deed, with interest, and shall thereupon receive a full assignment of the mortgage or trust deed, and all other securities held as collateral to the mortgage or trust debt." Appellant claimed that it was not liable to the mortgagor, Nance, for any loss under the policy. According to its agreement with the loan company, it had the option to pay the whole mortgage debt, and to have the mortgage assigned to it. Until it deter-

mined whether it would exercise this right, the loan company could not foreclose the mortgage after the loss by fire without violating its contract. But it renounced this right when it denied its liability under its contract to compensate the appellees for the destruction of the dwelling house by fire, and waived those conditions made necessary by the contract of insurance for appellees to perform in order to vest them with the right to sue upon the policy. The denial made the performance of the conditions unnecessary, and was virtually a notice to the assured that they need not perform them as a prerequisite to the right to sue, and was a waiver of the ninety days in which appellant could pay the loss. *German Ins. Co.* v. *Gibson*, 53 Ark. 494. All that could have been accomplished by the foreclosure of the mortgage has been done during the pendency of this action. By agreement of the parties, the mortgage debt has been credited with the value of the property held as security for the payment of the same. It does not appear that appellant has been prejudiced by the course pursued. There is no complaint that it has been, and there is no reversible error on this ground.

The parties to the policy agreed that it should be null and void for such portion of time as any note given for the assessment "charged for the insurance should remain" past due and unpaid, in whole or in part, and should so continue until the note should be fully paid. The note executed by the assured for the assessment charged was "past due and unpaid" at the time the dwelling was destroyed by fire. Appellant insists that it was relieved by this failure from liability for the loss. Was it relieved?

Whenever the owner sells property against the loss or damage of which he has been insured, and assigns his policy to the purchaser, "and this is made known to the insurer, and is assented to by him, it constitutes a new and original promise to the assignee to indemnify him in the manner and upon the conditions his vendor was insured; and the exemption of the insurer from further liability to the vendor, and the premium paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valid

contract between the insurer and the assignee." *Wilson* v. *Hill*, 3 Met. 66. In that case he will not be affected by the subsequent acts or neglect of his assignor. If the transfer be made by a mortgagor to a mortgagee of the insured premises as a collateral security, without any new considera-tion moving from the assignee to the insurer, the assignee can only recover where his assignor could have done so, had no assignment been made. "Such an assignment does not convert the policy into a contract of indemnity to the mortgagee. It is the interest of the mortgagor alone that is covered by it. The assignee takes it subject to all the express stipulations contained in the policy, and he cannot recover in case of subsequent breach" by the mortgagor of the condi-tions which render the policy void. *State Mutual Fire Insur-ance Company* v. *Roberts*, 31 Pa. St. 438; *The Buffalo Steam Engine Works* v. *The Sun Mutual Insurance Company*, 17 N. Y. 401; *Illinois Mutual Fire Insurance Company* v. *Fix*, 53 Ill. 151; *Edes* v. *Hamilton Ins. Co.*, 3 Allen, 362; *Swenson* v. *Sun Fire Office*, 68 Texas 461; 1 Biddle on Insurance, §§ 321 and 322, and cases cited. But where the assignment is based upon a contract between the insurer and the assignee, which is supported by a new and distinct consideration, such contract will govern. *Foster* v. *Equitable Ins. Co.*, 2 Gray, 216; *Hast-ings* v. *Westchester Ins. Co.*, 73 N. Y. 141; *Davis* v. *German Insurance Co.*, 135 Mass. 251.

In the case before us, Nance, the mortgagor, in considera-tion of a loan of a certain sum of money, agreed to have the dwelling which was included in the mortgage insured, and to assign the policy to the loan company. He did so. At the time of the assignment the appellant and the loan company en-tered into the contract which was indorsed upon the policy. In consideration that the loan company would notify appellant of any change of ownership or increase of hazard which should come to its knowledge, and pay for every increase of hazard not permitted by the policy to the mortgagor, it was agreed that the interest of the loan company in the insurance could not be effected by any act or neglect of the mortgagor. At the time this agreement was made the dwelling was in-

sured for about three years, subject to the power of the insurer reserved in the policy to cancel the insurance at any time upon written notice to the assured.    Nance had executed his note for the premium charged.    The policy was dated the 15th of April, 1896, and the note which was the consideration upon which it was based matured in the following December.    At the time the policy was assigned it had not matured, and the insurer, having the power to cancel the policy, deemed it a sufficient consideration.    In addition to it, the loan company agreed to pay for all increased risks, and to give notice of any change of ownership and increase of hazard which should come to its knowledge.    This notice was important, because it afforded the appellant means of protecting itself to some extent by the exercise of the reserved right to cancel. In view of these facts, we think that the contract of the appellant which was indorsed upon the policy was based upon a valuable consideration, and was valid and binding.    Both parties were satisfied with the consideration, and no reason is shown why it was not sufficient.    The right of the loan company to recover in this action was not, therefore, affected by the non-payment of the note of Nance at the time of the loss.

The demurrer to so much of appellant's answer as pleaded usury was properly sustained.    There was no usury in the contract for insurance or its assignment.    Appellant was not surety or guarantor for the payment of the debt contracted by Nance with the loan company, and had no right to plead usury against such debt.    *Warner* v. *Gouverneur*, 1 Barb. 36; *Stevens* v. *Reeves*, 33 N. J. Eq. 427.

Judgment affirmed.

HUGHES, J., absent.